UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

### Case Number: 16-20683-CIV-MORENO

HERON DEVELOPMENT CORPORATION,

        Plaintiff,

vs.

VACATION TOURS, INC., MEDIA
INSIGHT GROUP, INC., ROSANNA M.
MENDEZ and GEORGE A. ALVAREZ,

        Defendants.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS THE VERIFIED SECOND AMENDED COMPLAINT

### I.  Introduction

This is an intellectual property case involving alleged violations of The Lanham Act, Florida's Registration and Protection of Trademarks Act, and Florida's Deceptive and Unfair Trade Practices Act. The two Plaintiffs—the owner and the exclusive licensee of certain hotel- and resort-related trademarks—contend that Defendants infringed those trademarks by registering, and transacting business on, domain names strikingly similar to the protected marks. Plaintiffs filed a seven-count Verified Second Amended Complaint challenging Defendants' conduct, and Defendants subsequently filed a motion to dismiss the Complaint in its entirety.

For the reasons discussed below, this Court holds that Defendants' Motion to Dismiss the Verified Second Amended Complaint and Demand for Jury Trial is GRANTED in part and DENIED in part.

## II. Background

### A. Parties and Relevant Non-Parties

#### 1. Relevant Non-Party

##### a. Palace Holding, S.A. de C.V. ("Palace Holdings")

Palace Holdings is a Mexican corporation in the hospitality industry. It owns and operates hotels, resorts, and spas, and sells wedding, meeting, and vacation packages. Although not a party to this case, it has conducted business with Plaintiff and Defendants at various times. Defendant Vacation Tours, Inc. previously had a wholesaler relationship with Palace Holdings until Palace Holdings terminated the agreement in 2014. Palace Holdings previously licensed the trademarks at issue in this case to Heron. However, in February 2016, Palace Holdings assigned those trademarks and the licensing agreement to Palace Resorts, S.A. de C.V.

#### 2. Plaintiffs

##### a. Palace Resorts, S.A. de C.V. ("Palace Resorts")

Palace Resorts is a Mexican corporation in the hospitality industry. It owns and operates hotels, resorts, and spas, and sells wedding, meeting, and vacation packages. Heron currently holds the exclusive license to use, enforce, and protect certain Palace Resorts' trademarks in the United States.

##### b. Heron Development Corporation

Heron is a Panamanian company with its principal place of business in Panama City, Panama. It is a wholesale commercial retailer of unsold resort inventory for resorts in Mexico and the Caribbean, including the following properties owned by Palace Resorts:

    (1)       Beach Palace – located in Cancun, Mexico (opened October 1985);

    (2)       Cozumel Palace – located in Cozumel, Mexico (opened in May 2005);

    (3)       Isla Mujeres Palace – located in Isla Mujeres, Mexico (opened in January 2007);

    (4)       Le Blanc Spa Resort – located in Cancun, Mexico (opened in August 2005);

(5)     Moon Palace Gold & Spa Resort – located in Cancun, Mexico (opened January 1997);

(6)     Moon Palace Jamaica Grand – located in Ocho Rios, Jamaica (opened in June 2015);

(7)     Playacar Palace – located in Playa del Carmen, Mexico (opened in December 2005); and

(8)     Sun Palace – located in Cancun, Mexico (opened in December 1990).

Heron and Palace Holdings entered into an exclusive license agreement on December 5, 2015. The contract granted Heron an exclusive license to use certain trademarks owned by Palace Holdings in the United States for the purpose of marketing and promoting the eight resort properties listed above. The licensing agreement also granted Heron the exclusive right to enforce and protect the trademarks from dilution and infringement in the United States. On February 1, 2016, Palace Holdings assigned the trademarks as well as the licensing agreement with Heron to Palace Resorts.

### 3. *Defendants*

#### a. **Vacation Tours, Inc. ("Vacation Store")**

Vacation Tours, Inc.—which operates as "Vacation Store of Miami" and "Vacation Store"—is a Florida Corporation with its principal place of business in Coral Gables, Florida. For a period of time, Vacation Store maintained a wholesaler relationship with Palace Holdings.

#### b. **Media Insight Group**

Media Insight Group, Inc. is a Florida Corporation with its principal place of business in Miami Beach, Florida. It is the registrant of forty domain names that allegedly infringe Palace Resorts' trademarks.[1]

---

[1] Although the Parties' pleadings and briefs fail to define the relationship between Vacation Store and Media Insight Group, the record indicates Defendant Rosanna M. Mendez serves as an officer and director of both entities, and that Vacation Store markets and sells vacation packages through websites operated on the challenged domain names registered by Media Insight. Additionally, Plaintiffs contend that all four Defendants acted in concert "pursuant to an express or implied agreement" to commit the alleged violations. (Second Am. Compl. ¶ 15.)

### c.  George Alvarez

George A. Alvarez is the registered agent and officer/director of Media Insight.

### d.  Rosanna M. Mendez

Rosanna M. Mendez is an officer/director of Media Insight and Vacation Store.

## B.  Summary of Facts

Around 2008, Defendants began a marketing, advertising, and reservation referral service. Reservation referral services often have multiple wholesaler commission-based business relationships with hotels, resorts, and other travel-service providers. For every referral-service customer who ultimately purchases a vacation package or books the hotel, the referral service receives a commission payment.

On June 10, 2012, Vacation Store and Palace Holdings entered into the most recent wholesaler contract and addendum ("Final Contract") that specified rates and terms for booking rooms at properties owned and operated by Palace Resorts. The Final Contract prohibited the unauthorized use or reproduction of Palace Holdings' trademarks and provided that infringement—including the use of confusingly similar domain names—would be grounds for terminating the Final Contract.

At some point, Media Insight began registering the 40 domain names listed in the chart below—all of which include the exact name (or a slight variation) of a Palace Resorts property.[2] Vacation Store uses those domain names to operate live websites—designed to resemble authentic Palace Resorts websites—to market its reservation referral business and sell travel services to consumers. Notably, Vacation Store sells reservations at Palace Resorts properties through these domain names without any authorization from, or affiliation with, Palace Resorts.

---

[2] Media Insight is still the registrant for these domain names.

The following chart lists thirteen trademarks owned by Palace Resorts and licensed by Heron, their registration and incontestability[3] information, and the allegedly infringing domain names registered and used by Defendants to market and sell travel products and services.

| Palace Resort Corporation's Trademarks | Registration & Incontestability | Defendant's Allegedly Infringing Domain Names |
|---|---|---|
| 1. **BEACH PALACE** | Reg. no. 3622187, (Registered on May 19, 2009) (Incontestable on May 19, 2015) | 1. beachpalacecancunhotel.com<br>2. beachpalacecancunresort.com<br>3. beachpalace.tv<br>4. beachpalacegrand.com |
| 2. **COZUMEL PALACE** | Reg. no. 3154935, (Registered on Oct. 10, 2006) (Incontestable on Oct. 21, 2011) | 5. palacecancunhotel.com<br>6. palacecozumel.com |
| 3. **ISLA MUJERES PALACE** | Reg. no. 3611002, (Registered on Apr. 28, 2009) (Incontestable on May 20, 2015) | 7. islamujerespalace.com<br>8. islamujerespalacegrand.com<br>9. palaceislamujeres.com<br>10. islamujerespalaceresort.com |
| 4. **LE BLANC BED** | Reg. no. 3790516, (Registered on May 18, 2010), (Incontestable on May 16, 2010) | 11. leblanc-cancun.com<br>12. leblanc-hotel.com |
| 5. **LE BLANC SPA RESORT** | Reg. no. 3160152, (Registered on Oct. 17, 2006) (Incontestable on Nov. 29, 2011) | 13. leblanccancunspa.com<br>14. leblanccancunresort.com<br>15. leblancresortspa.com |
| 6. **MOON PALACE** | Reg. no. 2453148, (Registered on May 22, 2001) (Incontestable on May 18, 2007) | 16. moonpalacecancunresort.com<br>17. moonpalacepuntacanahotel.com<br>18. moonpalaceresortpuntacana.com<br>19. moonpalacepuntacanaresort.com<br>20. moonpalacejamaicagrand.com<br>21. moonpalacejamaicaresort.com<br>22. moonpalaceochorios.com<br>23. moonpalacerivieramaya.com |
| 7. **MOON PALACE GOLF & SPA RESORT** | Reg. no. 3611003, (Registered on Apr. 28, 2009), (Incontestable on May 19, 2015) | |
| 8. **MOON SPA & GOLF CLUB** | Reg. no. 3611001, (Registered on Apr. 28, 2009), (Incontestable on May 22, 2015) | |

---

[3] Plaintiffs allege that all but two of the thirteen marks are incontestable. The "CANCUN PALACE" marks are not incontestable, but Plaintiffs claim to have filed an application for registration with the United States Patent and Trademark Office for both marks. (Second Am. Compl. ¶ 17 n.1.)

| 9. PALACE RESORTS | Reg. no. 3738725, (Registered on Jan. 19, 2010), (Incontestable on Jan. 19, 2016) | 24. palacejamaicagrande.com<br>25. palaceresortsguide.com<br>26. xpu-hapalaceresort.com |
|---|---|---|
| 10. PLAYACAR PALACE | Reg. no. 3163633, (Registered on Oct. 24, 2006), (Incontestable on Oct. 24, 2011) | 27. palaceplayacar.com<br>28. playacarpalace.com<br>29. playacarpalacegrand.com<br>30. playacarpalaceresort.com<br>31. palaceplayacarresort.com |
| 11. SUN PALACE | Reg. no. 3622188, (Registered on May 19, 2009), (Incontestable as of May 19, 2015) | 32. sunpalacecancunresort.com<br>33. sunpalaceresort.com<br>34. sunpalace.tv |
| 12. CANCUN PALACE | Serial no. 86659415 | 35. palacecancunresort.com<br>36. cancunandbeachpalace.com<br>37. cancunpalace.tv |
| 13. CANCUN PALACE | Serial no. 86656713 | 38. cancunpalacelasamericas.com<br>39. cancunpalacespecials.com<br>40. palacecancun.com |

On March 14, 2014 Plaintiffs' lawyer sent a letter to Vacation Store and Rosanna Mendez terminating the Final Contract because of Vacation Store's use of the allegedly infringing domain names. According to Plaintiffs, the use of these domain names violated the Final Contract's intellectual property restrictions. Five days later, Plaintiffs' lawyer sent a second letter demanding that Vacation Store cease and desist using Palace Holdings' protected marks.

Vacation Store did not comply with Plaintiffs' requests. Rather, it responded on April 1, 2014 by sending Plaintiffs a proposed domain names license agreement. The proposed agreement sought payment from Plaintiffs in exchange for transferring the challenged domain names, or permitting Plaintiffs to use those domain names. Plaintiffs declined.

Plaintiffs' counsel sent Defendants Rosanna Mendez and George Alvarez a final cease and desist letter on June 15, 2015. This letter cited Defendants' intellectual property infringements and detailed seven instances of actual customer confusion resulting from Defendants' use of the domain names at issue. Defendants refused to comply. On February 1, 2016, Palace Holdings assigned "all of its rights, interests, and obligations in and to the Palace

Resort Marks and the License Agreement" to Palace Resorts. (Second Am. Compl. ¶ 22.) The assignment also transferred the licensing agreement with Heron to Palace Resorts.

## III. Analysis

### A. Motion to Dismiss Standard

Defendants ask the Court to dismiss Plaintiffs' seven-count Complaint for lack of standing and failure to state a claim upon which relief can be granted. "To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions," instead plaintiffs must "allege some specific factual basis for those conclusions or face dismissal of their claims." *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1263 (11th Cir. 2004). When ruling on a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept the plaintiff's well-pleaded facts as true. *See St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am.*, 795 F.2d 948, 953 (11th Cir. 1986). This tenet, however, does not apply to legal conclusions. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Moreover, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 1950. Those "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). In short, the complaint must not merely allege misconduct, but must demonstrate that the pleader is entitled to relief. *See Iqbal,* 129 S. Ct. at 1950.

### B. Count I: Violation of the Anti-Cybersquatting Consumer Protection Act

#### *1. Heron's Standing Under the Anti-Cybersquatting Act*

In Count I, Plaintiffs assert a claim to recover for alleged violations of the Anti-Cybersquatting Consumer Protection Act ("Anti-Cybersquatting Act"). *See* 15 U.S.C. § 1125(d). The Court must first determine whether Heron has standing to sue for violations of the Anti-Cybersquatting Act. Both parties agree that Heron does not own the trademarks at issue, but Heron contends its exclusive license to use and enforce the marks in the United States is sufficient to confer standing under the Act.

Heron's standing hinges on the Court's reading of 15 U.S.C. § 1125(d). "In construing a statute, a court assumes that the ordinary meaning of that language accurately expresses the legislative purpose." *Dionne v. Floormasters Enter., Inc.*, 667 F.3d 1199, 1205 (11th Cir. 2012) (internal citations and quotations omitted). The Court "must enforce plain and unambiguous statutory language according to its terms. *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251, 130 S. Ct. 2149, 2156, 176 L. Ed. 2d 998 (2010).

Here, the relevant statutory language leaves no room for interpretation. Section 1125(d) states that "[a] person shall be liable in a civil action by ***the owner*** of a mark . . . ." 15 U.S.C. § 1125(d) (emphasis added). Therefore, the statute's plain language confers standing on only the owner of a trademark. *Id.* Congress just as easily could have conferred standing on "the owner *or licensee* of a mark," but it did not do so. As such, this Court holds that Heron does not have standing to raise the cybersquatting claims in Count I of its Complaint. *See Trump Plaza of Palm Beaches Condo. Ass'n, Inc. v. Rosenthal*, No. 08-80408-CIV, 2009 WL 1812743, at *11 (S.D. Fla. 2009) (holding that "standing under [§ 1125(d)] is limited to registrants of trademarks, as the statute explicitly authorizes a cause of action 'by the owner of a mark'") (quoting 15 U.S.C. § 1125(d)); *Smith v. Wal-Mart Stores*, 537 F. Supp. 2d 1302, 1314 (N.D. Ga. 2008) (holding that § 1125(d) "entitl[es] only the owner of a mark to bring a claim . . . for cybersquatting"); *Lumpkin v. Rescue One Corp.*, 2016 WL 8115934, at *4 (N.D. Ala. 2016) (stating that under § 1125(d)'s plain language, "only the owner . . . of a mark may bring suit").

### 2. *Palace Resorts' Standing Under the Anti-Cybersquatting Act*

Defendants contend that Palace Resorts also lacks standing for several reasons. First, Defendants claim that Palace Holdings still owns—*i.e.*, did not assign—four of the thirteen marks, rendering both Heron and Palace Resorts without standing to sue on those marks. Second, Defendants suggest that Palace Resorts lacks standing because the license agreement between Heron and Palace Resorts is a "naked license." Third, Defendants contend that Palace Resorts lacks standing because the assignment of the marks was an invalid "assignment in gross."

### e. Palace Resorts' Ownership of the Marks

Defendants contend that Palace Resorts does not own four of the thirteen marks at issue. They claim that, "[a]ccording to the records of the United States Patent and Trademark Office," four marks are still owned by Palace Holdings. (Defs.' Mot. 12.) Plaintiffs' Complaint addresses this issue, stating that "[Palace Holdings] initially registered the Palace Resort Marks with the [United States Patent and Trademark Office], and the Palace Resort Marks are in the process of being updated with the [United States Patent and Trademark Office], which is the reason that some Palace Resort Marks on the [United States Patent and Trademark Office] website still list [Palace Holdings] as the owner rather than [Palace Resorts]." At the motion to dismiss stage, the Court must take Plaintiffs' allegations as true. Therefore, Defendants' refuted suggestion that Palace Resorts does not own four of the marks provides no basis for dismissal.

### f. Naked License

Defendants next argue that Palace Resorts lacks standing because the exclusive license agreement between Heron and Palace Resorts Corporation "fails to contain quality control provisions, which means it is a 'naked license,' and therefore invalid as a matter of law." (Defs.' Mot. 13.) Defendants contend that the "naked license" resulted in an abandonment of the marks.

"A trademark or service mark can be validly licensed to another to use but only if the licensor exercises control over the nature and quality of the goods and/or services sold by the licensee under the licensed mark." 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 18:38 (5th ed. 2017). "If the licensor fails to fulfill this duty, it may lose some or all rights in the mark." *Id.*

Discussing the policy behind this control requirement, the Eleventh Circuit explained that "[b]y requiring a licensor to supervise a licensee's use of its own mark and to some extent a licensee's operations under that mark, the law attempts to ensure that the public will not be deceived when purchasing goods and services that relate to that trademark." *Mini Maid Servs. Co. v. Maid Brigade Sys., Inc.*, 967 F.2d 1516, 1519 (11th Cir. 1992). This supervision

requirement "exists to protect the public from being misled about the quality or consistency of the products offered under the licensors' trademark." *Id.*

Defendants contend that Palace Resorts failed to satisfy its control requirement because the exclusive license agreement "granted to Heron the exclusive rights to enforce the trademarks against infringement." (Defs.' Mot. 14.) In other words, Defendants argue that the contract granted Heron—and only Heron—the right to sue for trademark infringement, and that because Palace Resorts could not sue trademark infringers without first obtaining Heron's authorization, Palace Resorts surrendered too much control to satisfy the supervision mandate. However, given that the present case arises out of Palace Resorts' and Heron's attempt to prevent, and recover for, trademark infringement, Defendants' argument strikes the Court as equal parts ironic and meritless.

Furthermore, Heron uses Palace Resorts' trademarks (with Palace Resorts' authorization) to market and sell the very same products and services Palace Resorts uses the trademarks to market and sell. Thus, there is no risk that the public will be "unwittingly deceived" about the "quality or consistency of the products offered under the licensor's trademark." *Mini Maid Servs. Co.*, 967 F.2d at 1519 (citing *Dawn Donut Co. v. Hart's Food Stores, Inc.*, 267 F.2d 358, 367 (2d Cir. 1959)). Accordingly, Defendants' "naked license" argument fails to defeat Palace Resorts' standing.

### g. Assignment in Gross

Finally, Defendants argue that Palace Holdings' assignment of the thirteen trademarks to Palace Resorts constituted an invalid assignment in gross because it "[did] not assign the marks together with the goodwill of the business symbolized by the marks." (Defs.' Mot. 14.) According to Defendants, this alleged assignment in gross resulted in an abandonment of the thirteen marks and vitiates Palace Resorts' standing.

At common law and under the § 10 of The Lanham Act, "[t]he basic rule of trademark assignments is that a trademark cannot be assigned to another separate from the goodwill associated with the mark." 3 *McCarthy on Trademarks and Unfair Competition* § 18:2. In the

Eleventh Circuit, "it is well-settled law that 'the transfer of a trademark or trade name without the attendant good-will of the business which it represents is, in general, an invalid, 'in gross' transfer of rights.'" *Int'l Cosmetics Exch., Inc. v. Gapardis Health & Beauty, Inc.*, 303 F.3d 1242, 1246 (11th Cir. 2002) (quoting *Berni v. Int'l Gourmet Rest. of Am.*, 838 F.2d 642, 646 (2d Cir. 1988)).

Like the rule against naked licenses, the anti-assignment-in-gross rule aims to prevent consumer deception caused when an assignee alters the quality of goods under the same mark. *In re XMH Corp.*, 647 F.3d 690, 696 (7th Cir. 2011). "Use of the mark by the assignee in connection with a different good will and different product may result in a fraud on the purchasing public, who reasonably assume that the mark signifies the same nature and quality of goods or services, whether used by one person or another." 3 *McCarthy on Trademarks and Unfair Competition* § 18:3.

Defendant contends that the assignment from Palace Holdings to Palace Resorts constituted an invalid assignment in gross because the assignment agreement lacked "any indication of assignment of good will or assets." (Defs.' Mot. 16.) Indeed, some courts have required trademark assignment agreements to satisfy certain technical requirements—namely, that the assignment agreement include a provision stating that the assignment transfers both the goodwill and the trademarks. And as Defendant correctly notes, "there is nothing in the January 15, 2016 amendment to the original license agreement that would indicate that there was an assignment of good will or assets." (Defs.' Mot. 16.)

However, rather than rigidly apply the anti-assignment-in-gross rule, most courts now hold that the rule simply "require[s] the seller and purchaser to attempt to ensure the accuracy of the implied representation of continuity of the seller's quality control by taking steps to ensure that some facsimile of the seller's quality control remains in place through the closing and for some indefinite period thereafter." 3 *McCarthy on Trademarks and Unfair Competition* § 18:3. "The rule is not . . . intended to be a mechanistic tool for invalidating assignments which do not satisfy a stereo-typed set of formalities . . . . [T]he test is simply whether the transaction is such

that the assignee can 'go on in real continuity with the past.'" *Dial-A-Mattress Operating Corp. v. Mattress Madness, Inc.*, 841 F. Supp. 1339, 1350 (E.D.N.Y. 1994) (assignment of the "Dial-A-Mattress" trade name to a corporation that was already using the name was not an invalid assignment in gross where the assignee had already built up substantial goodwill in the name before assignment and assignor had no assets other than its intellectual property at time of assignment); *see also Fitzpatrick v. Sony-BMG Music Entm't, Inc.*, No. 07 CIV. 2933 SAS, 2010 WL 3377500, at *3 (S.D.N.Y. Aug. 24, 2010) (holding that the assignment was not in gross where the assignee used the trademark to distribute records with the "same distinctive trade style" used by the assignor). Most importantly, the Eleventh Circuit has embraced this common-sense application of the assignment-in-gross rule. *See Int'l Cosmetics Exch., Inc. v. Gapardis Health & Beauty, Inc.*, 303 F.3d 1242, 1246 (11th Cir. 2002) ("[T]he assignment was not in gross because it continued the association of the [] trademark with the very goods which created its reputation.").

    As discussed, Heron uses Palace Resorts' trademarks to market and sell the very same travel products and services Palace Resorts uses the trademarks to market and sell. Thus, the challenged assignment presents no risk of deceiving the public about the "quality or consistency of the products offered under the licensor's trademark." *Dial-A-Mattress Operating Corp.*, 841 F. Supp. at 1350; *see also Purity Cheese Co. v. Frank Ryser Co.*, 153 F.2d 88, 90 (7th Cir. 1946) ("A trade-mark may be assigned, licensed, or lent, as long as it remains associated with the same product or business with which it has become associated in the public mind . . . ."). Therefore, the challenged assignment is enforceable and Palace Resorts retains standing to sue for violations of the Anti-Cybersquatting Act.

### 3. *Stating a Claim Under the Anti-Cybersquatting Act*

    The Anti-Cybersquatting Act "creates civil liability for the cybersquatting of any mark ("famous" or not)." 5 *McCarthy on Trademarks and Unfair Competition* § 25A:50 (citing 15 U.S.C.A. § 1125(d)). To establish a cybersquatting claim, Palace Resorts must "plead . . . the following four elements: (1) [t]he defendant has registered, trafficked in or used a domain name;

(2) [w]hich is identical or confusingly similar to a mark owned by the plaintiff; (3) [t]he mark was distinctive at the time of the defendant's registration of the domain name; and (4) [t]he defendant has committed the acts with a bad faith intent to profit from the plaintiff's mark." *Id.* Palace Resorts has pled sufficient facts to establish each of these elements.

First, Palace Resorts alleges that Defendants registered forty domain names strikingly similar to its trademarks. The Complaint states that Defendants use these domain names to operate websites displaying Palace Resorts' trademarks and copyright-protected content, and resemble authentic Palace Resorts websites.

Second, Palace Resorts pleads sufficient facts showing that Defendants' domain names are "identical or confusingly similar" to its trademarks. *Id.* "In the cybersquatting context, 'confusingly similar' means that the plaintiff's mark and the defendant's domain name are so similar in sight, sound or meaning that confusion is likely." *Id.* In this case, the pleadings indicate that Defendants' domain names incorporate Palace Resorts' trademarks exactly, or at the very least, in a confusingly similar manner. *See* Section II.B, *supra* at 5–6 (listing Defendants' domain names alongside Plaintiffs' trademarks); *see also DaimlerChrysler v. The Net Inc.*, 388 F.3d 201, 206 (6th Cir. 2004) (holding that the domain name "foradodge.com" was confusingly similar to the trademark DODGE in the context of automobiles). Both parties sell the same travel products and services for the same resorts, making customer confusion more likely. *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 976 (11th Cir. 1983) ("The greater the similarity between the products and services, the greater the likelihood of confusion.") (quotations omitted). Additionally, Palace Resorts and the Defendants both utilize the internet as a marketing channel, which increases the likelihood of customer confusion. *See Turner Greenberg Assocs.*, 320 F. Supp. 2d at 1332 (noting that convergent marketing channels increase the likelihood of confusion). Even if these pleadings were insufficient, Palace Resorts includes allegations about multiple instances of *actual* customer confusion, where the customer believed he booked his reservation through Palace Resorts' website, when in fact he booked his

reservation through Defendants' website on one of the challenged domain names. Therefore, Palace Resorts has pled facts to satisfy the "confusingly similar" requirement.

Third, Palace Resorts contends that its marks "were distinctive at the time Defendants registered, trafficked in, or used the Infringing Domain Names." (Second Am. Compl. ¶ 70.) It specifically notes that all but two of the thirteen marks at issue are incontestable, which establishes the presumption of validity—*i.e.*, that the marks are distinctive and "cannot be challenged on the grounds that [they are] merely descriptive." *Dieter v. B & H Indus. of Sw. Florida, Inc.*, 880 F.2d 322, 328 (11th Cir. 1989).

For the two unregistered trademarks—both comprised solely of the combined term "CANCUN PALACE"—Palace Resorts claims that Palace Holdings began using these marks in commerce in December 2015, and has filed an application to register the marks with the United States Patent and Trademark Office. Both marks are associated with the Cancun Palace Hotel and Spa—a specific property owned by Palace Resorts. Because Palace Resorts uses the "CANCUN PALACE" marks to denote a hotel and spa—rather than an actual palace located in Cancun—the marks "suggest characteristics of the goods and services and 'require an effort of the imagination by the consumer in order to be understood as descriptive.'" *Id.* Therefore, both "CANCUN PALACE" marks are "suggestive"—and, in turn, "distinctive"—rather than merely "descriptive." *Id.* Finally, because Defendants fail to specify the date they registered the domain names that allegedly infringe the "CANCUN PALACE" marks, the Court presumes that Palace Holdings' use of the suggestive marks in 2015 predated Defendants' domain name registration such that, as Palace Holdings' successor in interest, Palace Resorts has priority rights in the marks. Accordingly, Palace Resorts has pled sufficient facts to establish the third element of an Anti-Cybersquatting Act violation: the thirteen trademarks were distinctive when defendants registered the challenged domain names.

Fourth, the Complaint contains ample allegations suggesting that Defendants registered and used these domain names with a bad-faith intent to profit off of Palace Resorts' trademarks and corresponding goodwill. The Anti-Cybersquatting Act establishes nine factors to consider

when determining whether a domain name has been registered or used in "bad faith" with the intent to profit from a mark. Those factors are:

(1) Whether the defendant has trademark or other intellectual property rights in the domain name;

(2) Whether the domain name refers to the legal name of the defendant;

(3) Whether the defendant ever used the domain name in connection with the bona fide offering of any goods or services;

(4) Whether the defendant has a bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

(5) Whether the defendant has an intent to divert consumers from the mark owner's website to his own, either for commercial gain or with the intent to tarnish or disparage the mark, when that diversion could cause harm to the mark owner's goodwill;

(6) Whether the defendant offers to transfer or sell the domain name for financial gain when he has not used or had an intent to use the domain name in connection with the bona fide offering of any goods or services;

(7) Whether the defendant provides material and misleading false contact information when applying for the registration of the domain name or the defendant intentionally fails to maintain accurate contact information;

(8) Whether the defendant acquired multiple domain names that the defendant knows are identical or confusingly similar to distinctive marks; and

(9) Whether the mark is distinctive or famous.

*Jysk Bed'N Linen v. Dutta-Roy*, 810 F.3d 767, 776 (11th Cir. 2015) (quoting 15 U.S.C. § 1125(d)(1)(B) (quotations omitted)).

In this case, the Complaint illustrates multiple examples of Defendants' bad-faith intent to profit from Palace Resorts trademarks. First, Palace Resorts alleges that Defendants have no intellectual property rights in Palace Resorts' trademarks, but still incorporated those marks in their registered domain names. Second, none of the allegedly infringing domain names consist of

the legal name of any of the Defendants. Third, Defendants use the domain names in commerce to divert web traffic and profits from Plaintiffs. Fourth, based on the letters sent to Defendants in response to their infringing use (D.E. 170-10–170-11), and Defendants' efforts to mimic the appearance of authentic Palace Resorts websites, it is clear that Defendants registered and used the domain names with knowledge that doing so would harm Palace Resorts and the value of its trademarks. Fifth, after receiving multiple cease and desist letters, Defendants sent Plaintiffs a "domain names license agreement seeking payment from Plaintiffs for a transfer or use of the trademark protected domain names." (Second Am. Compl. ¶ 60.) Sixth, Defendants registered at least forty domain names that they allegedly knew were identical or confusingly similar to Plaintiffs' distinctive marks. Accordingly, Palace Resorts has alleged sufficient facts suggesting that Defendants acted in bad faith as defined by the Anti-Cybersquatting Act.

Because Palace Resorts has standing to sue under the Anti-Cybersquatting Act, and has alleged facts that—if true—satisfy all four elements of a cybersquatting claim, it has stated a claim upon which relief can be granted. Therefore, the Court denies Defendants' motion to dismiss Palace Resorts' claims under Count I.

## C. Count II: Trademark Infringement Under The Lanham Act – 15 U.S.C. § 1114

### 1. Standing to Sue for Trademark Infringement Under the Lanham Act

In Count II of the Complaint, Plaintiffs assert a claim for trademark infringement under The Lanham Act. 15 U.S.C. § 1114. To recover for trademark infringement under § 1114, Plaintiffs must have standing to sue. Section 1114(a) states that violators "shall be liable in a civil action *by the registrant* for the remedies hereinafter provided." 15 U.S.C. § 1114(1) (emphasis added). Thus, the text of § 1114(1)(a) restricts recovery to trademark registrants only.[4] "The majority of cases hold that the statute means what it says: only the federal

---

[4] *See* Author's Comment, 6 *McCarthy on Trademarks and Unfair Competition* § 32:3

> I believe that the statute and the majority of cases interpreting it creates a clear and bright line rule: only the registrant of record has standing to sue for the special rights and remedies provided by Lanham Act § 32(1) to the owner of a registered mark. No amount of judicial interpretation or manipulation of words can turn an exclusive license into an assignment.

'registrant' has standing to sue for infringement of a federally registered mark." 6 *McCarthy on Trademarks and Unfair Competition* § 32:3. Because the Court must assume the ordinary meaning of the statutory language "accurately expresses the legislative purpose," this Court finds that only trademark registrants have standing to sue under § 1114 of The Lanham Act. *See Dionne*, 667 F.3d at 1205; *see also Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd.*, 726 F.3d 62, 78 (2d Cir. 2013) ("Congress could easily have included 'licensee' or 'exclusive licensee' among the terms in 15 U.S.C. § 1127 that define a 'registrant'" but "[i]t chose instead to limit standing to parties having a more specific set of interests in the registered mark.").

Heron concedes that it is not the registrant of the trademarks at issue. As such, Heron does not have standing to sue for trademark infringement under § 1114 of the Lanham Act. The Court grants Defendants' motion to dismiss Count II with respect to Heron. However, Palace Resorts adequately alleges that it is the registrant of the thirteen marks at issue. Therefore, Palace Resorts has standing to sue under § 1114.

### 2. *Stating a Claim for Trademark Infringement Under The Lanham Act*

To survive Defendants' motion to dismiss, Palace Resorts must also state a claim for relief under § 1114 of the Lanham Act. "The Lanham Act imposes liability for infringement of a registered mark upon *any person* who *uses* an infringing mark in interstate commerce *in connection with* the sale or advertising of goods or services." 4 *McCarthy on Trademarks and Unfair Competition* § 25:26 (emphasis in original). "This broad definition includes any manufacturer, supplier, dealer, printer, publisher or broadcaster who in fact has used the

---

A trademark assignment and a license are two quite different transactions with widely different impacts. An assignment transfers all rights in a mark: a license does not. I believe that the minority view cases which allow an exclusive licensee to sue because it is "almost like" or "tantamount to" an assignee are not following the statute. If an exclusive licensee wishes to sue in federal court, it can do so only under Lanham Act § 43(a), unaided by the benefits of registration. Those benefits can only be invoked by the registrant.

infringing mark in connection with 'the sale, offering for sale, distribution or advertising of any goods or services' when such use is likely to cause confusion." *Id.*

As already discussed, Plaintiffs allege that Defendants registered domain names that incorporate Palace Resorts' trademarks and that Defendants used those domain names to operate websites—which intentionally (and misleadingly) resemble authentic Palace Resorts websites— to market and sell travel services. Palace Resorts, therefore, has stated a valid claim for relief under § 1114 of The Lanham Act. *See Pennsylvania Bus. Bank v. Biz Bank Corp.*, 330 F. Supp. 2d 511, 522 (E.D. Pa. 2004) (plaintiff prevailed on trademark infringement claim where "Defendant's domain name <http://www.bizbank.com> [was] identical to plaintiff's BIZBANK mark" such that "consumers, in all likelihood, will visit defendant's website while searching for plaintiff and thus may experience 'initial interest confusion'").

In short, Palace Resorts has standing to sue and has stated a claim upon which relief can be granted. Therefore, with respect to Palace Resorts, the Court denies Defendants' motion to dismiss the federal trademark infringement claims in Count II.

**D.  Count III: False Designation of Origin Under The Lanham Act – 15 U.S.C. § 1125(a)**

  *1.  Standing to Sue for False Designation of Origin Under The Lanham Act*

In Count III, Plaintiffs assert a claim under The Lanham Act for false designation of origin, 15 U.S.C. § 1125(a). Section 1125(a) authorizes suits for false designation of origin or false advertising by one "who believes that he is or is likely to be damaged." 15 U.S.C. § 1125(a). Unlike the previous statutory provisions, § 1125(a) confers standing more broadly, authorizing actions where a plaintiff pleads "an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1395, 188 L. Ed. 2d 392 (2014); *Kroma Makeup EU, Ltd. v. Boldface Licensing ± Branding, Inc.*, No. 6:14-CV-1551-ORL, 2015 WL 1708757, at *5 (M.D. Fla. Apr. 15, 2015) (discussing the Supreme Court's two-pronged standing inquiry from *Lexmark*, which requires courts to determine (i) whether the plaintiff falls within

the zone-of-interests of the statutory provision, and (ii) whether "his injuries were proximately caused by the defendant's wrongful conduct").

Plaintiffs allege that Defendants' use of infringing domain names caused actual confusion, resulting in the loss of goodwill and profits. Accordingly, both Heron and Palace Resorts have standing to sue under § 1125(a) because they "fall[] within the zone-of-interests of the statutory provision" and "plead injuries proximately caused by [Defendants'] wrongful conduct." *Lexmark Int'l, Inc.*, 134 S. Ct. at 1395; *see also* 6 *McCarthy on Trademarks and Unfair Competition* § 32:12 ("Courts have held that an exclusive licensee of a mark may have standing to sue under § [1125(a)] for acts which cause injury to the licensee.").

### 2. *Stating a Claim for False Designation of Origin Under The Lanham Act*

To state a claim for false designation of origin under The Lanham Act, Palace Resorts must plead that Defendants: (1) used a designation;[5] (2) in commerce; (3) in connection with goods or services; (4) where the "designation [was] likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of defendant with another person, or as to the origin, sponsorship, or approval of defendant's goods, services, or commercial activities by another person"; and (5) plaintiff suffered damaged as a result. 5 *McCarthy on Trademarks and Unfair Competition* § 27:13.

Plaintiffs allege that Defendants registered domain names incorporating Palace Resorts' trademarks and used the domain names to operate websites marketing and selling travel services. Furthermore, they contend that Defendants designed those websites to resemble authentic Palace Resorts sites. Finally, Plaintiffs plead detailed facts indicating that Defendants' conduct caused multiple instances of *actual* customer confusion—namely, occasions where a customer believed he booked his reservation through a genuine Palace Resorts' website, when in fact he booked his reservation through a website operated on one of Defendants' infringing domain names. Plaintiffs therefore have pled stated a false-designation-of-origin claim under The Lanham Act.

---

[5] *I.e.*, "any word, term, name, symbol, or device, or any combination thereof." 15 U.S.C. § 1125(a)(1)(A).

This Court denies Defendants' motion to dismiss Count III with respect to Heron and Palace Resorts.

## E.  Count IV: Dilution Under The Lanham Act – 15 U.S.C. § 1125(c)

### 1.  Standing to Sue for Trademark Dilution Under The Lanham Act

In Count IV, Plaintiffs assert a claim for trademark dilution under The Lanham Act. *See* 15 U.S.C. § 1125(c). Similar to § 1114 and § 1125(d), § 1125(c) states that "*the owner* of a famous mark" is entitled to relief for trademark dilution. Indeed, § 1125(c) repeats that limitation three separate times: (i) "the owner of a famous mark . . . shall be entitled to an injunction"; (ii) "the owner of the famous mark shall be entitled to injunctive relief"; and (iii) "the owner of a famous mark shall also be entitled to [additional remedies]." 15 U.S.C. §§ 1125(c)(1) and (5).

As with the statutory provisions prohibiting cybersquatting (§ 1125(d)) and trademark infringement (§ 1114), the majority of courts hold that "[s]tanding to sue for a claim of dilution under Lanham Act § [1125(c)] is limited to 'the owner of a famous mark.'" 6 *McCarthy on Trademarks and Unfair Competition* § 32:3. Consequently, "an exclusive licensee of a mark has no standing to sue under the federal anti-dilution law." *Id.*; *see also Prince of Peace Enter., Inc. v. Top Quality Food Mkt., LLC*, 760 F. Supp. 2d 384, 393 (S.D.N.Y. 2011), *adhered to on denial of reconsideration*, No. 07 CIV. 00349 RJH FM, 2011 WL 650799 (S.D.N.Y. Mar. 14, 2011) ("As it is not the owner of the mark, [Plaintiff] lacks standing under [§ 1125(c)] of the Lanham Act.").

Because Heron does not own the trademarks at issue, it lacks standing to sue for trademark dilution under The Lanham Act. Therefore, the Court grants Defendants' motion to dismiss Count IV with respect to Heron. However, because Plaintiffs sufficiently allege that Palace Resorts owns the thirteen marks at issue, Palace Resorts has standing to sue under §§ 1125(c)(1) and (5) of The Lanham Act.

### 2.  Stating a Claim for Trademark Dilution Under The Lanham Act

"[T]o establish a prima facie claim for relief for dilution under the federal law, the plaintiff must plead . . . that: (1) the plaintiff is the owner of a mark that qualifies as a 'famous'

mark, (2) the mark is distinctive, (3) the defendant is making commercial use of the mark in interstate commerce, (4) defendant's use began after plaintiff's mark became famous, and (5) likelihood of dilution." 98 Am. Jur. Proof of Facts 3d 313 (Originally published in 2007). However, Courts are split on the applicability of dilution laws where the parties are in competition. According to Professor McCarthy:

> Under state antidilution laws, some courts have inferred that where the case is one of competitive or closely similar goods or services, but a dispute as to differences in wording or format of the marks, the dilution theory is not applicable. *This is the rule in Illinois and Florida.* Those courts take the view that the legal theory of antidilution was not conceived to substitute for the likelihood of confusion rule when the parties are competitors. Under this view, the dilution theory is confined to its original purpose: cases where the marks are very similar, but the products or services are so unlike that there is no likelihood of confusion of source or connection.

4 *McCarthy on Trademarks and Unfair Competition* § 24:74 (emphasis added).

Palace Resorts concedes that "'the dilution concept is meant to apply to similar marks on dissimilar products.'" (Pls.' Resp. 17 (quoting *PortionPac Chem. Corp. v. Sanitech Sys., Inc.*, 210 F. Supp. 2d 1302, 13110 (M.D. Fla. 2002)).) But it contends that "Defendants' websites on the Infringing Domain Names and reservation services related thereto *are* dissimilar from Plaintiffs' websites and reservation services" such that "Plaintiffs' Florida trademark dilution claims should not be dismissed." (Pls.' Resp. 17 (emphasis in original).)

The case law indicates, however, that the dissimilarity between the Parties' "websites and reservation services" is not the type contemplated by the statute. "The [trademark dilution] doctrine 'has no application when the question is whether the marks being used on goods of substantially the same descriptive properties are similar enough to cause confusion in the minds of consumers with respect to the source of the goods.'" *Harley-Davidson Motor Co. v. Iron Eagle of Cent. Florida, Inc.*, 973 F. Supp. 1421, 1426 (M.D. Fla. 1997) (quoting *Community Federal Sav. & Loan Ass'n. v. Orondorff*, 678 F.2d 1034 (11th Cir. 1982)).

As already discussed, Palace Resorts' cybersquatting and trademark infringement claims survived Defendants' motion to dismiss largely because the similarity of the products and services offered by both parties increases the likelihood of confusion. As in *Harley-Davidson Motor Company*, "it is clear that the parties sell similar products" and that "Defendant[s'] misuse of the marks on these products does not merely 'dilute' Plaintiffs' marks, it infringes them." 973 F. Supp. at 1426. But because "the dilution of the marks is addressed and remedied by federal trademark [infringement] law, it is not necessary to seek the broader protections of the anti-dilution act." *Id.* Accordingly, the federal anti-dilution statute is inapplicable in this case, so the Court grants Defendants' motion to dismiss Count IV of the Complaint with respect to both Heron and Palace Resorts.

**F.  Count V: Trademark Infringement Under the Florida Trademark Act – Fla. Stat. § 495.131**

*1.  Standing to Sue for Trademark Infringement Under the Florida Trademark Act*

In Count V of the Complaint, Plaintiffs assert a claim for trademark infringement under § 495.131 of the Florida Trademark Act. Similar to its federal corollary (15 U.S.C. § 1114), § 145.131 of the Florida Trademark Act provides that "*the owner* of such registered mark" is entitled to bring a civil action. *See* Fla. Stat. § 145.131. Therefore, courts hold that "to establish a claim of trademark or service mark infringement, Plaintiff [is] required to show that . . . he owns a valid, protectable trademark." *Anderson v. Upper Keys Bus. Grp., Inc.*, 61 So. 3d 1162, 1167 (Fla. Dist. Ct. App. 2011). Plaintiffs allege that Palace Resorts owns the relevant marks; Heron does not. Therefore, Palace Resorts—not Heron—has standing to sue for trademark infringement under § 145.131 of the Florida Trademark Act. The Court grants Defendants' motion to dismiss Count V with respect to Heron.

*2.  Stating a Claim for Trademark Infringement Under The Florida Trademarks Act*

To determine the validity of a trademark infringement claim, the Florida Legislature instructs courts to assess the claim under federal law. Section 495.181 of the Florida Trademark Act states that "[t]he intent of this chapter is to provide a system of state trademark registration

and protection substantially consistent with the federal system of trademark registration and protection . . . ." Fla. Stat. § 495.181; *see also Gift of Learning Found., Inc. v. TGC, Inc.*, No. 01–8069–CIV–HURLEY, 2001 WL 34718642, at *30 (S.D. Fla. 2001) (citing *Investacorp, Inc. v. Arabian Inv. Banking Corp.*, 931 F.2d 1519, 1521 (11th Cir. 1991) for the proposition that "the analysis of the Florida statutory and common law claims of trademark infringement and unfair competition is the same as under the federal trademark infringement claim"), *aff'd*, 329 F.3d 792 (11th Cir. 2003) (per curiam).

This Court already determined that Palace Resorts stated a valid trademark infringement claim under The Lanham Act. Therefore, "because Florida trademark infringement and unfair competition law is the same as federal law," the Palace Resorts likewise states a valid claim for trademark infringement under § 495.131 of the Florida Trademark Act. *Custom Mfg. and Eng'g, Inc. v. Midway Serv., Inc.*, 508 F.3d 641, 652 (11th Cir. 2007) (stating that because Florida trademark infringement and unfair competition law is the same as federal law, a court can use federal law analysis to evaluate the merits of the Florida claim). Accordingly, the Court denies Defendants' motion to dismiss Count V with respect to Palace Resorts.

## G. Count VI: Dilution Under the Florida Trademarks Act – Fla. Stat. § 495.151

As with trademark infringement claims under the Florida Trademark Act, courts should assess state law trademark dilution claims in a manner consistent with federal law. *See* Fla. Stat. § 495.181; *see also Great Southern Bank v. First Southern Bank*, 625 So. 2d 463, 467 (Fla. 1993) ("Under § 495.181, federal trademark law is 'persuasive authority for interpreting and construing' the Florida statute."). Federal and state courts in Florida "take the view that the legal theory of antidilution was not conceived to substitute for the likelihood of confusion rule when the parties are competitors." 4 *McCarthy on Trademarks and Unfair Competition* § 24:74. Indeed, this Court already explained above that, because the federal trademark infringement law would appropriately remedy any trademark dilution, the anti-dilution statute is inapplicable in this case. That reasoning applies with equal force to invalidate Plaintiffs' trademark dilution

claims under § 495.151 of the Florida Trademark Act. Accordingly, the Court grants Defendants' motion to dismiss Count VI with respect to both Heron and Palace Resorts.

## H. Count VII: False Designation of Origin Under the Florida Deceptive and Unfair Trade Practices Act – Fla. Stat. § 501.201–501.213

### 1. Standing Under the Florida Deceptive and Unfair Trade Practices Act

In Count VII, Plaintiffs allege violations of Florida's Deceptive and Unfair Trade Practices Act. Similar to § 1125(a) of The Lanham Act—which authorizes suits for false designation of origin or false advertising by one "who believes that he is or is likely to be damaged"—Florida's Deceptive and Unfair Trade Practices Act confers standing on "a person who has suffered a loss as a result of a violation" of the Act. Fla. Stat. § 501.211(2). The Court already held that both Heron and Palace Resorts were entitled to sue under § 1125(a)'s more inclusive standing provision. Furthermore, Florida's Deceptive and Unfair Trade Practices Act was designed "[t]o make state consumer protection and enforcement consistent with established policies of federal law relating to consumer protection." Fla. Stat. § 501.202. As such, the allegations establishing Plaintiffs' standing to sue under § 1125(a) likewise establish their standing to sue under Florida's Deceptive and Unfair Trade Practices Act.

### 2. Stating a Claim Under the Florida Deceptive and Unfair Trade Practices Act

As this Court already explained, Palace Resorts and Heron pled sufficient facts to state a false-designation-of-origin claim under § 1125(a) of The Lanham Act. Those same allegations establish a claim for relief under Florida's Deceptive and Unfair Trade Practices Act. A plaintiff suing under Florida's Deceptive and Unfair Trade Practices Act "need only allege facts sufficient to show that it was actually aggrieved by the unfair and deceptive conduct." *Tuckish v. Pompano Motor Co.*, 337 F. Supp. 2d 1313, 1320 (S.D. Fla. 2004). But because "the legislature did not define what is an unfair or deceptive act, a practice which 'offends established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers may violate [Florida's Deceptive and Unfair Trade Practices Act].'" *State of Fla., Office of Atty. Gen., Dep't of Legal Affairs v. Tenet Healthcare Corp.*, 420 F. Supp. 2d 1288, 1309–10 (S.D. Fla. 2005)

(quoting *Betts v. Advance Am.*, 213 F.R.D. 466, 482 (M.D. Fla. 2003)). A court deciding a claim under this Act should consider "whether the Federal Trade Commission and other federal courts deem such conduct to be an unfair method of competition or an unconscionable, unfair or deceptive act or practice under federal law." *Mack v. Bristol–Myers Squibb Co.*, 673 So.2d 100, 105 (Fla. 1st DCA 1996). Having satisfied the elements of a false-designation-of-origin claim under The Lanham Act, Palace Resorts likewise has pled a valid claim under Florida's Deceptive and Unfair Trade Practices Act. Fla. Stat. § 501.204. *See Marco's Franchising, LLC v. Marco's Italian Express, Inc.*, No. 8:06–cv–00670–T–17–TGW, 2007 WL 2028845 at *3, 2007 U.S. Dist. LEXIS 49211, at *10 (M.D. Fla. July 9, 2007) (analyzing the plaintiff's [Florida's Deceptive and Unfair Trade Practices Act] claim simultaneously with the plaintiff's Lanham Act claim because the former is "derivative of" the latter). Therefore, the Court denies Defendants' motion to dismiss Count VII with respect to both Heron and Palace Resorts.

## IV.  **Conclusion**

The Court has considered the motion, the response, the reply, pertinent portions of the record, and being otherwise fully advised in the premises, it is **ADJUDGED** as follows:

**Count I:** The Court **GRANTS** Defendants' motion to dismiss Count I with respect to Heron, because Heron lacks standing to sue under the Anti-Cybersquatting Act. The Court **DENIES** Defendants' motion to dismiss Count I with respect to Palace Resorts, because Palace Resorts has standing and has stated a valid claim upon which relief can be granted.

**Count II:** The Court **GRANTS** Defendants' motion to dismiss Count II with respect to Heron, because Heron lacks standing to sue for trademark infringement under § 1114 of the Lanham Act. The Court **DENIES** Defendants' motion to dismiss Count II with respect to Palace Resorts, because Palace Resorts has standing and has stated a valid claim upon which relief can be granted.

**Count III:** The Court **DENIES** Defendants' motion to dismiss Count III with respect to Heron and Palace Resorts, because both Plaintiffs have standing to sue for false designation of

origin under § 1125(a) of the Lanham Act and have stated a valid claim upon which relief can be granted.

**Count IV:** The Court **GRANTS** Defendants' motion to dismiss Count IV with respect to Heron and Palace Resorts because neither Plaintiff states a valid trademark dilution claim under § 1125(c) of the Lanham Act.

**Count V:** The Court **GRANTS** Defendants' motion to dismiss Count V with respect to Heron, because Heron lacks standing to sue for trademark infringement under Fla. Stat. § 495.131. The Court **DENIES** Defendants' motion to dismiss Count V with respect to Palace Resorts, because Palace Resorts has standing and has stated a valid claim upon which relief can be granted.

**Count VI:** The Court **GRANTS** Defendants' motion to dismiss Count VI with respect to Heron and Palace Resorts because neither Plaintiff states a valid trademark dilution claim under Fla. Stat. § 495.151.

**Count VII:** The Court **DENIES** Defendants' motion to dismiss Count VII with respect to Heron and Palace Resorts, because both Plaintiffs have standing to sue for false designation of origin under the Florida Deceptive and Unfair Trade Practices Act and have stated a claim upon which relief can be granted. It is also

**ADJUDGED** that Defendants must file an answer to the Verified Second Amended Complaint by December 21, 2017.

DONE AND ORDERED in Chambers at Miami, Florida, this 30th of November 2017.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record