IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 1: 16-cv-20683-FAM

HERON DEVELOPMENT CORPORATION, a foreign
corporation, and PALACE RESORTS, S.A. de C.V.,
a foreign corporation

       Plaintiff,

v.

VACATION TOURS, INC., a Florida Corporation
d/b/a VACATION STORE OF MIAMI,
MEDIA INSIGHT GROUP, INC., a Florida
Corporation d/b/a MEDIA INSIGHT, ROSANNA
M. MENDEZ, and GEORGE A. ALVAREZ,
Jointly, severally, and individually

       Defendants.

_____/

## DEFENDANTS' TRIAL BRIEF AND CLOSING ARGUMENTS

Defendants, VACATION TOURS, INC., a Florida Corporation d/b/a VACATION

STORE OF MIAMI, MEDIA INSIGHT GROUP, INC., a Florida Corporation d/b/A MEDIA

INSIGHT, ROSANNAM. MENDEZ, and GEORGE A. ALVAREZ, jointly, severally, and

individually and through their undersigned attorney hereby files the following Trial Brief and

Closing Arguments in Opposition to Plaintiff's Request for Maximum Statutory Damages,

Permanent Injunction and Attorneys' Fees.

### INTRODUCTION

After granting Plaintiff's Motion for Summary Judgment on Count I of Plaintiff's Second

Amended Complaint, and further granting dismissal of portions of the Second Amended

Complaint pursuant to Rule 41, this Court denied Defendant's request for a trial on damages, and

struck Defendants' witnesses.  This Court relying upon the representations of Plaintiff that the only

remaining issues were legal arguments, entered an Order setting a trial brief schedule, and denying Defendants' the opportunity to present any evidence in opposition to Plaintiff's claims.

Plaintiff convinced this Court to dispense with the trial on damages after leading this Court into error in granting the Motion for Summary Judgment. Plaintiff convinced this Court that there would only be need for legal arguments and that no testimony would be needed. A review of Plaintiff's legal exhibits belie this argument. Plaintiff has filed more than 63 exhibits in support of its position. The exhibits include statements from individuals who are not identified other than by name, Exhibit 49, hundreds of domain names, Exhibit 30, information regarding prior suits, Exhibit 33, documents filed in other Court proceedings, Exhibit 48, spreadsheets proposing to summarize documents, Exhibit 63, information from web providers, Exhibit 2, documents taken from web pages, Exhibits 9 and 60, and trademark registrations, Exhibit 23. None of these exhibits are admissible in that they violate Federal Rules of Evidence regarding relevancy, foundation, hearsay, and are improper summaries.

This Court improperly denied Defendants the right to jury trial. Defendants, even though the Plaintiff is seeking statutory damages, are still entitled to jury trial. *Bar-Meir v. N.AM. Die Casting Ass'n*, 55 Fed. Appx. 389, 390-91 (8th Circuit 2003) holding that a Defendant has a right to a jury determination of statutory damages under the 7th Amendment.

Plaintiff is not entitled to any relief sought, since the Anti-Cyber Squatting Consumer Protection Act (ACPA) 15 USC Section 1125 (d) includes a safe harbor provision which provides that bad faith intent "shall not be found at any case in which the Court determines that the person believed and had reasonable grounds to believe that the use of the domain name was fair use or otherwise lawful". The 11th Circuit stated in Pensacola Sales Inc. v. Eastern Shore Toyota, LLC, 684 F. 3d 1211 (11th Circuit 2012) held that "regardless of how many statutory factors the evidence establishes, Eastern Shore cannot be liable for registering or using the Bob Tile trademark with

bad faith intent to profit if it nonetheless believed and had reasonable grounds to believe that the use of the domain name was lawful". The circumstances of this case warrant safe harbor for Defendants, and Plaintiff is not entitled to any damages.  The undisputed evidence establishes that the majority of the domain names at issue were registered years prior to Plaintiff obtaining trademarks. The Plaintiff previously introduced a chart showing the date of domain registration and the dates of trademark registrations. In all but three registrations, the domain names had been registered first. In some cases, the Defendant had used the domain name for over nine years prior to the trademarks registration. Throughout that time the Defendants had been selling hotel rooms at Plaintiff's resorts through the webpages, and with the authorization of the Plaintiff.

The evidence in this case clearly establishes that this is not an exceptional case in which attorneys fees are warranted nor the maximum damages sought by Plaintiff warranted. The evidence clearly establishes that the parties had been in business for eighteen years, and Plaintiff, after receiving economic benefits for eighteen years from the Defendant decided to file suit. There are no facts which support Plaintiff's allegations that this is an exceptional case.

## CLOSING ARGUMENT

The majority of Plaintiff's Trial Brief comprise of arguments about discovery disputes during the litigation, not about the damages to Plaintiff.  The reason is simple. The parties had a business relationship for over eighteen years. Defendant has promoted Plaintiff's hotels throughout that time. The Defendants have use websites with permission and knowledge of the Plaintiff to promote Plaintiff's hotels. The webpages used to promote the Plaintiff's hotels contain no links to other hotels. The webpages do not direct traffic to competitors.  Plaintiff received all the economic benefits of the sales of the hotel rooms through the webpages. No competitors of the Plaintiff benefited from the web pages. Plaintiff recognizes that it has no economic damages, and,

consequently, withdrew its claim for damages, and sought relief under the statutory damages provision of the ACPA.

The parties had contracts until 2014. When the contract was terminated, Defendant became an affiliate of Go Go. Go Go is a tour operator who has contracts with Palace and is authorized to use Palace's intellectual property. Upon becoming an affiliate of Go Go, Defendants are authorized to use Palace's intellectual property, just as Go Go is. The Chief Operating Officer of Palace testified that the Defendants, as affiliates of Go Go, would be authorized to use the intellectual property. When Defendants became an affiliate of Go Go, the web pages remained the same. The webpages were still used to only promote Plaintiff's hotels. Plaintiff again received all the economic benefits of the web pages.

Plaintiff also spends a substantial time arguing that is it entitled to damages because of the delay in proceeding to trial. The majority of the delays in this case are related directly to the Plaintiff.  Initially, suit was brought by Heron.  On the eve of trial in October 2017, after extensive questioning by this Court, Plaintiff moved to amend the Complaint to add an additional party. Subsequently, this Court dismissed Heron from Count I on November 30, 2017 (D.E. 196). Thus, any delay brining this matter to trial was caused by Plaintiff's failure to bring suit by the proper party.  By the time Heron was dismissed, this Court had entered a preliminary injunction requiring that the domain names be directed to the Plaintiff. Consequently, if there was any delay, it was not caused by the Defendants, and in light of the injunction, Plaintiff has suffered no damages.

Plaintiff has made multiple misrepresentations to this Court regarding the trademarks. Plaintiff failed to advise this Court that although it obtained trademarks, Plaintiff disclaimed parts of the trademarks such as Cozumel, Cancun, Isla Mujeres, beach, sun, and moon. Even though in order to obtain the trademarks they made the disclaimer, Plaintiff misrepresented to this Court that is was entitled to trademark protection as to the entire trademark name although the trademark

office specifically held that Plaintiff was not entitled to the rights to use Cozumel, Cancun, Isla Mujeres, beach,  sun, and moon, golf, and spa apart from the trademark term as a whole. Thus, Plaintiff's claim that they are entitled to use of any domain names that include the words beach, sun, moon, golf, and spa is incorrect.

## I. Introduction

Reduced to its essential elements, Plaintiffs are upset that the Defendants are advertising for resale the availability of genuine goods (i.e., rooms at Plaintiff's hotels) lawfully obtained through use of the true marks for such goods.  Such conduct is entirely legal.  As courts have long held: "Once a trademark owner sells his product, the buyer ordinarily may resell the product under the original mark without incurring any trademark law liability."  NEC Electronics v. CAL Circuit ABCO, 810 F.2d 1506, 1509 (91 Cir.  1987) (citing Prestonettes, Inc. v. Coty, 264 U.S. 359, 368-69 (1924)).   Here, Plaintiff has sold rooms at their various hotels to wholesalers who then provide those rooms to customers. Plaintiff does not have an exclusive arrangement for booking rooms at the resorts. Although they take reservations for those rooms directly, Palace Resorts also accept bookings from travel agents, including Defendants and Go Go Tours. As a matter of trademark law, Defendants, as travel agents, have a right to advertise the availability of rooms at resorts through the use of Palace's marks and to identify such lodgings, even without Palace's consent. Quill Corp. v. NADA Scientific Ltd., 1998 WL 295502, *3 (N.D. 111. 1998) (right to resell genuine goods includes the right to advertise).  Defendants also have the right to offer package accommodations which include stays at resorts combined with travel packages from other providers.  Prestonettes, Inc. v. Coty, 264 U.S. 359, 368-69 (1924) (purchaser of genuine product may repackage product and sell the same).  Because there is no likelihood of confusion by consumers -as consumers are getting the actual goods advertised (i.e., rooms at Palace's resorts) - Plaintiff cannot prevail on the underlying claims.

Palace Resorts own and operate a number of vacation destinations in Mexico. The resorts are located in Cancun, Cozumel, Isla Mujeres, and the Playa Car region of the Cancun Peninsula. These properties are promoted by the Defendants.  The Plaintiff accepts reservations to the various resorts directly or through travel agencies, both wholesalers and retailers.

Defendants' travel agency specializes in vacation packages to Mexico.  Defendants' activities are no different than those engaged in by any other retailer of travel services.  Defendants field inquiries from perspective customers who are seeking travel arrangements and accommodations for various destinations.  Defendants then make the necessary travel arrangements and book the requested accommodations.  When the reservations are complete, the customers have airline tickets and hotel reservations for the destination of their choice. Plaintiff does not dispute this.  In fact, the Plaintiff acknowledges that as early as 2008 (although the evidence establishes a much earlier date) the Defendants began marketing, advertising, and providing reservation referrals to Palace Resorts hotels, and that Palace resorts and the Defendants were involved in a wholesale relationship for over a decade. The parties also entered into contracts for the sale of rooms at Palace Hotels.

Plaintiff relies upon the activities of travel agencies to promote the hotels. Defendants purchased the rooms directly from Palace Resorts and include those accommodations in vacation packages.  Defendants advertise the various packages through various print media and the internet. Defendants advertising is similar to that utilized by thousands of other travel retailers who advertise the ability to book accommodations at Palace Resorts in that it identifies by name, the various resorts and accommodations available at any particular geographic destination.

Additionally, the marks that Palace seeks to protect are geographic marks associated with a generic term, Palace. As such, the marks have not developed secondary meaning. Combining

Cancun, a geographic term, with the term Palace, a generic term indicating a high-end resort, does not make that mark distinctive nor does it develop a secondary meaning deserving of protection. In fact, essentially every hotel in Mexico uses the term Palace in the description of their hotels. Plaintiff, in its trademark application, specifically disclaimed the rights to use the geographic terms, and the generic terms such as beach, sun, moon, golf, and spa.

The majority of the domain names that the Plaintiff complains about were all registered prior to Palace obtaining any trademark. Additionally, Palace Resorts was aware of the use of the domain names, since Palace authorized the marketing/advertising campaign by the Defendants on behalf of Palace.

As recognized by the Courts, the trademark laws do not preclude Defendants from selling genuine goods bearing marks, Shell Oil, 928 F.2d at 107, and this right necessarily includes the right to advertise Defendants' resale activities, including through use of the internet. Quill Corp., 1998 WL 295502 at *3; Brookfield Comms., Inc. v. West Coast Entertainment. Com., 174 F.3d 1036 (9th Cir. 1999) (held Lanham Act does not preclude one from using a competitor's mark truthfully to identify competitor's own goods; fair use doctrine applies in cyberspace as well as real world).

Furthermore, Plaintiffs' failure to prove whether the Defendants used the domain names as licensees of the registering Defendant, warrant dismissal of the ACPA claim. Bird v. Parsons, 289 F.3d 865, 881 (6th Cir 2002) (failure to include allegation that non-registering defendants were licensees of registered defendants deemed "more fundamental and indeed fatal flaw" warranting dismissal of claim). Nor is there any evidence that any of the Defendants sought to traffic the domain names at issue.

Defendants sell genuine hotel rooms on the internet using domain name addresses that incorporate portions of the wording contained in Palace Resorts, S.A. de C.V.'s ("Palace" or "Plaintiff") trademarks. Defendants sold these rooms through a contract with Plaintiff, and, subsequently through an affiliate program with a wholesale travel agent named Go Go Tours. Go Go Tours is authorized to sell the hotel rooms on behalf of Palace, and is further authorized to use Palace's trademarks when selling those rooms. Defendants' use of the trademarks and intellectual property either through the direct contract or the affiliate contract is entirely legal.

Vacation Tours has had a long-standing relationship with Palace which began as early as 2000. Commencing in 2001, Defendants began registering various domain names to use in promoting Plaintiff's resorts. After the parties had been in business for a number of years, and after the registration of most of the domain names, Palace began to register trademarks. Those trademarks are currently the subject of Petitions for Cancellations due to abandonment by non-use.

As early as 2001, Vacation Tours and Palace entered into contracts whereby Defendants were authorized to use any and all of Plaintiff's trademarks or intellectual property. Palace Resorts provided to Defendants the materials to use on Defendants' web pages [D.E. 78 and 126]. Throughout this time, Palace Resorts provided passwords and login information so that Defendants could access Plaintiff's intellectual property and use that information on the web pages. Additionally, throughout this time, Palace Resorts sent numerous emails to Defendants requesting that Defendants update the various web pages. In 2014, Defendants became affiliates of Go Go Tours, and are authorized to use the trademarks pursuant to the affiliate program. The prior statements are supported by facts provided by Defendants in opposition to both the preliminary injunction and the Motion for Partial Summary Judgment. [D.E. 78 and 126]

Defendant George Alvarez owns numerous trademarks which incorporate parts of the trademarks claimed by Plaintiff.  The trademarks of Mr. Alvarez were registered prior to the registration of the trademarks by Plaintiff.  Those trademarks were submitted as evidence in both the preliminary injunction and in opposition of the Motion for Partial Summary Judgment.  [D.E. 78 and 126].

## THIS CASE IS NOT EXCEPTIONAL

The following facts were never disputed by Plaintiff:

a.      Plaintiff provided to Defendants materials to be used on Defendants' web pages, including the trademarks. The evidence establishes that in 2010, Plaintiff requested Defendants update their webpages to include promotional materials in order to help them sell the properties. From 2010-2014 Plaintiff continued to send emails to Defendants requesting changes to the webpages including new logos and pictures and correcting the names of the properties.   (see email exhibits);

b.      Defendants were authorized to use the various web pages. Palace was aware of the webpages and requested that the webpages be updated to include more current photos and proper names of resorts (emails).

c.      On October 2, 2013, the marketing manager for Plaintiff sent an email to Defendants requesting updates of the various web pages in order to reflect the proper names of the hotels, proper logos, and photos. The marketing manager provided login and password information in order for Defendant to access Plaintiff's files to update the web pages. The Plaintiff provided screen shots of Defendants' web pages that were requested to be updated.  The web pages included those claimed to be infringing.

d.      On February 6, 2014, Plaintiff sent an email to Defendants requesting that Defendants price match the rates that Plaintiff was using to promote its Sun Palace Resort.  Plaintiff attached to the email screen shots of Defendants' web pages reflecting the domain names of the prices being advertised on the web pages.  Defendants made the price match changes as requested.

e.      On March 7, 2014, Plaintiff sent an email and attachments to Defendants requesting updates to the web pages including correcting the names of the resorts and updating the logos and photos.

f.       On January 9, 2014, Plaintiff sent an email to Defendants to discuss buying back the domain names that were being used by the Defendants.

g.       Representatives of Plaintiff came to the offices of Vacation Store for sales meetings. At those meetings, Plaintiff would review the web pages used to promote its hotels, and would suggest to Defendants specific modifications be made in an attempt to increase sales.  (See affidavit of Rosanna Metz-Mendez and attachments). [D.E 78 and 126] for above paragraphs.

h.       Sandor Winkler was the Chief Development Officer for Plaintiff. Individuals who were copied on the emails included the Global Vice President of Tours and Sales, the Global Vice President of Marketing, the Vice President of E-Commerce, and the Marketing Manager for the Plaintiff.

i.       The Marketing Manager's job was to review Defendants' web pages to ensure that the content was accurate.  The manager was to ensure that the names of the hotels, photos, logos, and content were current.

j.       Palace is a common term in the hotel industry used to describe high end hotels. The 11th Circuit has specifically made this finding in Bavaro v. Vacation Store. See web pages in [D.E. 78 and 126].

k.       When Mr. Winkler sees the word Palace he does not think of the Palace Resorts.

l.       Plaintiff is not claiming that it has the exclusive rights to use the term "Palace".

m.       Plaintiff is aware that Defendant is in an affiliate program with a wholesale travel agent.

n.       As an affiliate of Go Go, Defendants would be authorized to use Plaintiff's trademarks on the web pages.

o.       The wholesaler (Go Go) enters into a contract with Plaintiff to promote Plaintiff's hotels.  The wholesaler then enters into an agreement with travel agents (resellers) and the resellers are provided access to Plaintiff's trademarks, logos, photos, and content to use on the webpages.

p.       The wholesaler gives log in information to the resellers to access Plaintiff's files to create the content on the web pages.

q.       Plaintiff knows that since 2014 Defendants have been in an affiliate program.

r.       In 2014, Plaintiff improperly terminated the wholesale contract with Defendant, which resulted in an injunction being entered against Plaintiff prohibiting Plaintiff from terminating the contract.

s.       Palace does not have a good rating with the Better Business Bureau.

t.      There are web pages and web sites dedicated to how bad the Palace Resorts are for vacations.  See excerpts of Winkler's deposition [D.E. 78 and 126].

u.      Plaintiff's own witnesses testified that through Defendants' relationship as an affiliate agent of Go Go Tours, **Defendants would be authorized** to use Plaintiff's trademarks in their advertising.  See Winkler's deposition [D.E. 78 and 126].

v.      Additionally, Plaintiff subpoenaed records from Go Go Tours which demonstrate that Defendants and Go Go had an affiliate contract which authorized the use of the trademarks, and that the web pages were used to book rooms at the Plaintiff's resorts (Exhibit 2, the subpoena contract, and room bookings).

The record indicates that the use of the alleged marks on the various web pages were used to accurately describe the services being offered, i.e. the sale of hotel rooms at the Plaintiff's resorts. Additionally, the web pages clearly identify Vacation Store as the merchant on the various webpages.

## EMAILS BETWEEN THE PARTIES

w.      The Defendants were authorized to use the various web pages. Palace Resorts was aware of the webpages and on occasion requested the webpages be updated to include more current photos and proper names of the resorts.

x.      On June 3, 2010, Defendants sent to Palace Resorts an email indicating that various web sites owned and operated by the Defendants would be updated to reflect promotional material provided to it by the Plaintiff.  The email listed the web pages and domain names.

y.      On October 2, 2013, the marketing manager sent an email to the Defendants requesting updates to the various web pages in order to reflect the proper names of the hotels, proper logos, and photos.  The marketing manager provided log in and password information in order for the Defendants to access Plaintiff's files to update the web pages.  The Plaintiff also

provided screen shots of the web pages that were requested to be updated. The web pages included those claimed to be infringing.

z.      On February 6, 2014, the Plaintiff sent an email to the Defendants requesting that the Defendant price match the rates that Plaintiff was using to promote its Sun Palace Resort. Attached to the email were screen shots of Defendants' web pages reflecting the domain names and the prices being advertised on the web pages. The Defendant made the price match changes as requested.

aa.      On March 7, 2014, Plaintiff sent an email and attachments to the Defendants requesting updates to the webpages including correcting the names of the resorts, and updating the logos and photos.

bb.      On January 9, 2014, Plaintiff sent an email to the Defendants to discuss buying back the domain names that were being used by the Defendants.

cc.      Representatives of the Plaintiff would come to the offices of Vacation Store for sales meetings. At those meetings Plaintiff would review the web pages used to promote its hotels, and would suggest the changes to the Defendants in an attempt to increase sales.

**TESTIMONY OF GABRIELA PICHARDO**

dd.      Palace instructed Defendant to make changes to their web pages in 2013 and 2014.

ee.      Palace provided passwords to Defendant to enable Defendant to access Plaintiff's trademarks, logos, photos, and content in order to place information on the Defendants' web pages.

ff.      Palace sent screen shots of Defendant's web pages to Defendant requesting Defendant to make changes to the web pages including correcting the names of the hotels.

gg.      Palace representatives reviewed Defendant's web pages and clicked on links on the web pages to ensure the accuracy of the web pages.

hh.     Palace sent images to Defendant in order for the Defendant to use those images on the web pages.

ii.     In 2013, both the marketing and sales departments were reviewing Defendants' web pages to ensure the accuracy of the pages, including the names of the hotels, the images of the hotels, and the description of the hotels.

jj.     The marketing manager copied her superiors on the emails sent to the Defendant in 2013 and 2014.

kk.     Defendants would send screen shots of their web pages to Palace which reflected promotions being requested by Palace which were included in Defendant's web pages.

## PRIOR LITIGATION BETWEEN THE PARTIES

ll.     In 2010, Plaintiff brought a claim against the Defendants in the World Intellectual Property Organization (WIPO) over a dispute concerning domain names which incorporated "Hard Rock".

mm.     The WIPO Arbitration Center resolves internet domain name disputes between a domain name registrant and a third party over the registration and use of the domain name. The third party is often a trademark or service mark holder.

nn.     The arbitration was won by the Defendant.

oo.     Plaintiff was aware as early as 2010 that it had legal options available to it to pursue claims against the Defendants over use of the domain names at issue in this case. Plaintiff elected not to pursue these claims until 2016, at least six years after becoming aware of the Defendants' use of the domain names, and six years after it was aware of legal options that it had to pursue ownership of the domain names.

pp.     After the WIPO dispute, the parties entered into a settlement agreement whereby Defendants transferred some domain names to the Plaintiff. The parties also agreed to extend the wholesale contract between the parties for the Palace resorts properties which are the subject of this lawsuit.

## CONCLUSIONS OF LAW

There are limitations on trademark incontestability.  The mere fact that a trademark has become incontestable does not mean that there are no defenses available to the user of the mark. Incontestability defenses are found in 15 U.S.C. Section 1115 (b). Included in those defenses are the fact that the mark is generic, there is fair use of the mark, the mark was adopted and used prior to the Plaintiff's registration and that equitable principles including laches, estoppel, and acquiescence are applicable.

Plaintiff's marks are generic. A statutorily incontestable mark can be rendered invalid and cancelled if it is the generic name for the goods and services or portion thereof for which it is registered.  15 U.S.C. 1064 (3); see also Park n' Fly Inc. v. Dollar Park and Fly, Inc. 469 U.S. 189, 194-95 (1985).  This Circuit has held that the term "Palace" is a generic industry term for an upscale hotel. See Bavaro Palace, S.A. v.  Vacation Tours, Inc. # 05-14824 (11th Circuit 2006).

"There are several different approaches to defining 'generic'. By one test, a generic name refers to a particular genus or class of which an individual article or service is but a number. Soweco, 617 F. 2d at 1183. By another measure, a generic name is the term by which the product or service itself is commonly known.  See Nat'l Conference of Bar Exam'rs v. Multi-state Legal Studies, 692 F. 2d 478, 487 (7th Circuit 1982). Still, other courts say a generic name depicts the product or services as a whole, rather than in any particular feature, quality or characteristic of the whole.  Blinded Veterans Association v. Blinded American Veterans Found, 872 F. 2d 1035, 1039 (DC Circuit 1989).  Generic lies not in the term itself, but in the use of the term: 'a word may be

generic of some things and not of others: 'Ivory' is generic of elephant tusk but arbitrary as applied to soap.' Soweco, 617 F. 2d at 1183. A general use of a word may not be registered as a trademark. Park N' Fly, 469 U.S. at 194". See Welding Services, Inc. v. Forman 509 F. 3d 1351 (11th Circuit) 2007.

The Courts have held that a generic term cannot be appropriated from a public domain; therefore, even if the name becomes in some degree associated with the source, a generic mark cannot achieve true secondary meeting.

If Plaintiff's marks are not generic, they are weak and entitled to very narrow protection. "[W]hile incontestability precludes a defendant from arguing that a mark is merely descriptive, incontestability does not render a mark strong." See, e.g., Michael Caruso & Co. v. Estefan Enterprises, 994 F. Supp. 1454, 1459 (S.D. Fla. 1998). "[T]he alleged infringement of an incontestable trademark cannot be defended on the ground that the trademark is merely descriptive ... incontestability alone does not establish that the trademark is strong and therefore likely to cause the consumer confusion necessary for a finding of trademark infringement." Id. Plaintiff's use of a common term in the hotel industry combined with the extensive third party use of the term and the nondescript and/or geographic terms means Plaintiff's marks do not have strong trademark significance.

**Fair use** -- "One can use another's mark truthfully to identify another's goods or services in order to describe or compare its product to the markholder's product." See Setai Hotel Acquisitions, LLC v. Luxury Rentals Miami Beach, Inc., 2016 WL 7217730 (S.D. Fla. Dec. 12, 2016) (dismissing without prejudice trademark claims where there were no factual allegations in the Complaint describing how Defendant uses the mark beyond as is the Defendant's contention to describe the geographical location of the units).

Defendants' use of the Plaintiff's mark on its website and elsewhere does not extend beyond what is "reasonably necessary to identify" the rooms Defendants rent. In addition, the websites clearly indicate Vacation Store as the provider of the services.

**Acquiescence** -- "The defense of acquiescence requires proof of three elements: (1) the plaintiff actively represented it would not assert a right or claim; (2) the delay between the active representation and assertion of the right or claim was not excusable; and (3) the delay caused the defendant undue prejudice." Angel Flight of Ga., Inc. v. Angel Flight Am., Inc., 522 F.3d 1200, 1207 (11th Cir.2008) (citation and quotation omitted). "The difference between acquiescence and laches is that laches denotes passive consent and acquiescence denotes active consent." Id.  "Active consent" does not necessarily mean an explicit promise not to sue. It only requires "conduct on the plaintiff's part that amounted to an assurance to the defendant, express or implied, that plaintiff would not assert his trademark rights against the defendant." Creative Gifts, Inc. v. UFO, 235 F.3d 540, 547-48 (10th Cir.2000); see also Coach House Rest., Inc. v. Coach & Six Rests., Inc., 934 F.2d 1551, 1558, 1564 (11th Cir.1991)." University of Ala. Bd. of Trustees v. New Life Art, 683 F. 3d 1266 (11th Cir. 2012). The email exchanges constitute active consent, and provide assurances that Plaintiff would not assert its right rights against Defendants.

**Prior Use**. Under Section 7 (c) of the Trademark Act, the date of filing an application, whether based on actual use or intent to use, establishes a registrant's state of "constructive use", establishing nationwide priority except against a person who began use of the mark prior to that date.

A prior user can defeat the presumption of incontestability for any territory in which it can show it used the mark prior to the registrant's date of filing and acquired common law rights as a result of its use of the mark prior to the registrant's use.

Despite the elevated status of an incontestable registration, under Section 15 of the Trademark Act incontestability itself is expressly subject to any prior users' common law rights that existed at the time of the registration in any particular territory based on the use that continues to the present.  An incontestable registration cannot be used to prevent the continued use of the marks that were in existence prior the registration of the marks. Thus, even an incontestable registration does not bestow the exclusive right to use the mark where the prior user has continued to use the mark and has established rights since prior to the registration.  See Cuban Cigar v. Upmann International, Inc. 199 USPQ 193 (S.A. N.Y 1978), aff'd without opinion 607 F. 2d 995 (2d Circuit 1979) where a nationwide prior user was granted injunction blocking the owner of an incontestable registration from using the mark anywhere in the United States.

**No bad faith intent.**  Plaintiff and/or its predecessor's in interest knew and approved of Defendants' domain name registrations and therefore, there is no basis to establish bad faith intent in obtaining the domain names. Additionally, the majority of registrations occurred prior to the registration of Plaintiff's marks. There is no bad faith where the Defendants had reasonable grounds to believe that the use of the domain names was a fair use or otherwise legal.

## <u>SAFE HARBOR</u>

The Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), includes a safe harbor provision at § 1125(d)(1)(B)(ii), a defense which should result in the Court's reconsideration and reversal of its Order Granting Plaintiff's Motion for Partial Summary Judgment [D.E. 240]. The safe harbor provision states that bad faith intent "shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was fair use or otherwise lawful." *Id.* The Eleventh Circuit stated in *Pensacola Sales, Inc. v. Eastern Shore Toyota, LLC*, 684 F.3d 1211 (11th Cir. 2012), citing to § 1125(d)(1(B)(ii), "[r]egardless of how many statutory factors the evidence establishes,

Eastern Shore cannot be liable for registering or using the Bob Tyler trademark with a bad faith intent to profit if it nonetheless 'believed and had reasonable grounds to believe that the use of the domain name was . . . lawful.'" The circumstances of this case warrant safe harbor for Defendants.

To qualify for safe harbor, the domain name registrant must have had both a subjective belief and an objectively reasonable belief in the lawfulness of its actions. *Pensacola Motor Sales, Inc. v. Eastern Shore Toyota, LLC*, 684 F.3d 1211, 1227 (11th Cir. 2012) citing to § 1125(d)(1)(B)(ii). In the *Pensacola* case, the domain name registrant lacked a bad faith intent to profit because it believed and had reasonable grounds to believe that its actions were lawful. *Id.* The registrant testified that: "Based on everything I knew, owning these domain names was legal, and is legal." *Id.* Defendants in this case are similarly situated in that they had a subjective belief and an objectively reasonable belief in the lawfulness of their actions, because: 1) Plaintiff knew of the domain name registrations and Defendants use for years, all while Defendants were actively selling Plaintiff's genuine hotel rooms; 2) Plaintiff actively assisted Defendants in the modification of various websites to conform to Plaintiff's specifications, all while Defendants were actively selling Plaintiff's genuine hotel rooms; and 3) Defendants continue to sell Plaintiff's genuine hotel rooms through an affiliate that is enrolled in Plaintiff's affiliate program- a program that permits affiliates to use Plaintiff's trademarks. See [D.E. 78 and 126].

Here, Plaintiff sells rooms at its various hotels to wholesalers who then provide those rooms to customers. Plaintiff does not have an exclusive arrangement for booking rooms at the resorts. Although it takes reservations for those rooms directly, Palace Resorts also accepts bookings from travel agents, including Defendants. As a matter of trademark law, Defendants, as travel agents, have a right to advertise the availability of rooms at resorts through the use of Palace's marks and to identify such lodgings, even without Palace's consent. *Quill Corp. v. NADA Scientific Ltd.*, 1998 WL 295502, *3 (N.D. 111. 1998) (right to resell genuine goods includes the right to advertise).

Defendants also have the right to offer package accommodations which include stays at resorts combined with travel packages from other providers. *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368-69 (1924) (purchaser of genuine product may repackage product and sell the same). In this case, consumers are getting the actual good/services advertised, namely, hotel rooms at Plaintiff's resorts.

Vacation Tours has a long-standing relationship with Palace Resorts which began as early as 2000. See [D.E. 78 and 126].  Commencing in 2001, Defendants began registering various domain names to use in promoting Plaintiff's resorts. After the parties had been in business for a number of years, and after the registration of most of the domain names, Palace Resorts began to register trademarks.

As early as 2004, Vacation Tours and Palace Resorts entered into contracts whereby Defendants were authorized to use any and all of Plaintiff's trademarks or intellectual property. Palace Resorts provided to Defendants the materials to use on Defendants' web pages. Throughout this time, Palace Resorts provided passwords and log in information so that Defendants could access Plaintiff's intellectual property and use that information on the web pages. Additionally, throughout this time, Palace Resorts sent numerous emails to Defendants requesting that Defendants update the various web pages. In 2014, Defendants became affiliates of Go Go Tours, and were authorized to use the trademarks pursuant to the affiliate program.  See [D.E. 78 and 126]. Additionally, Defendant George Alvarez owns numerous trademarks which incorporate parts of the trademarks claimed by Plaintiff. The trademarks owned by Mr. Alvarez were registered prior to the registration of the trademarks by Plaintiff.  See [D.E. 78 and 126]. All of this led to a subjective belief and an objectively reasonable belief that the registration and use of the domain names in dispute was fair use or otherwise lawful.

These facts are not only relevant to the safe harbor provision, they also support factor (3) of 15 U.S.C. § 1125(d)(1)(B)(i)(III), "whether the defendant ever used the domain name 'in connection with the bona fide offering of any goods or services,'" *see Jysk Bed'n Linen v. Monosij Dutta-Roy*, 810 F.3d 767, 775 (11th Cir. 2015); *citing to* § 1125(d)(1)(B)(i), weighs very heavily in Defendants' favor.

A former franchisee that uses its former franchisor's trademarks might be liable for trademark infringement; however, continuing to use websites that include the former franchisor's trademarks does not necessarily mean that the former franchisee is in violation of the ACPA. *Overhead Door Corp. v. Burger*, 2013 U.S. Dist. LEXIS 84486, at *16 (M.D. Ga. June 17, 2013).

> [a]lthough no particular factor is dispositive under the ACPA, *Pensacola Motor Sales Inc. v. Eastern Shore Toyota, LLC*, 684 F.3d 1211, 1223 (11th Cir. 2012), Burger's prior lawful use of his domain name as an Overhead Door franchisee is strong evidence that undercuts a finding a cybersquatting. Furthermore, given that Overhead has not identified any other indicia of bad faith, beyond Burger's continued use of the website, the Court finds there are insufficient facts to establish a cybersquatting violation.

*Id.* Defendants' prior registration and use of the domains at issue, with Plaintiff's knowledge and assistance with the maintenance of the website content, undercuts Plaintiff's claim for relief under the ACPA. Even if Defendants in this case were not current affiliates of Go Go Tours, a member of Plaintiff's affiliate program, the decision in *Overhead Door Corp.* is persuasive authority that Defendants lack bad faith under the ACPA.

Therefore, Defendants cannot be found to have a "bad faith" intent in registering or using the domain names in dispute. Without "bad faith," Defendants are not liable for cybersquatting under the ACPA and Defendants' registration and use of the domain names was lawful.

**PETITION TO CANCEL**

Attached and marked Exhibit 3 is a copy of the petitions to cancel filed with the TTAB. As recognized by the TTAB, the petitions to cancel for abandonment by non-use is a valid claim that will continue to be litigated.  See Order denying Motion to Dismiss (exhibit 4).

Plaintiff argues, in trying to convince this Court that the petitions to cancel have no validity, that foreign entities may establish use and commerce based upon a foreign use in a trademark. Plaintiffs rely upon Penta Hotels Limited v. Penta Tours Reisen, 9. U. S. P. Q. 2d 1081 (D. CONN 1988).  Penta is a minority decision, and factually distinguishable from this case.  In Penta, Penta had established corporate sales offices in New York, Chicago, and Los Angeles.  Penta at Page 5. Penta Hotels operated hotels in the United States.  One hotel, the Penta Hotel in New York, was the fifth largest hotel in New York City and one of the ten largest hotels in the United States.  Penta at Page 10.  Additionally, Penta used and displayed its marks on both the exterior and interior of hotels in the United States.  Penta at Page 20.

Palace cannot present any evidence similar to that presented in Penta.  Sandor Winkler, the Corporate Representative designated by the Plaintiff to testify prior to the Motion for Temporary Injunction testified that neither Palace Hotel nor any of its representatives have offices in the United States. Mr. Winkler further testified that both Heron and IHR, its predecessor corporation, are Panamanian Corporations. Their call centers are in Panama. Mr. Winkler further testified that neither Heron nor Palace have reservation centers in the United States.  He testified that all telephone calls are redirected to Panama.  He also testified that Palace Resorts is not an entity. These facts are significantly different that the facts in Penta.  See Winkler depo Infra.

The majority of cases hold that simply using advertising or the internet to promote its services is insufficient to establish use in commerce.  Unless foreign commerce involves the United States, Congress does not have the power to regulate it. Use of a mark in a foreign country does

not give rise to rights in the United States if the goods or services are not sold or rendered in the United States.  Linville v. Rivard, 41 USPQ 2d 1731 (TTAB 1996) affirmed 133 F. 3d 1446 (Fed. Circuit 1998); Buti v. Impressa Perosa S.R. L. 139 F. 3d 98 (2nd Circuit 1998); see also Honda Motor Co. v. Winklemann 90 USPQ 2d 1660 (TTAB 2009) holding that evidence of internet print outs is not evidence of trademark use for the claimed goods nor does it show that the applicant intended to use the mark in the United States.

The Buti Court, supra, noted use of a mark in advertising in the United States for services available only outside of the United States is not sufficient to establish use of the mark in commerce. Offering goods to US consumers abroad does not constitute use since Congress could not regulate such activities and the activity is not in use.   Buti at 105.

The conclusion from the cases decided after the Penta case is that mere advertising that reaches Americans is not enough to demonstrate the mark as being used in commerce. Additionally, the fact that Americans purchase goods or services under the mark to use abroad does not demonstrate interstate commerce or use in commerce.

Plaintiff also relies upon International Bancorp, LLC. v. Societe des Bains 329 F. 3d 359 (4th Circuit 2003). Like Penta, Societe des Bains has offices and reservation centers in the United States.  Also, like Penta, International Bancorp is a minority decision which has not been followed. The majority decisions hold that for purposes of trademark rights, use means in the United States not in other nations.   See 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competitions section 17.9 (4th Edition 2000).  See also, Person's Co, LTD v. Christman 900 F. 2d 1565 (1990) (the Court held that for all the good and services were in Japan, and the mark was used only on goods and services in Japan that such foreign use has no affect on U.S. Commerce at 1568 and 1569); Stagecoach Properties, Inc.  v. Wells Fargo & Company 199 U.S.P.Q. 341 (Trademark Tr.  & App. Bd.) (the parties argued that the marks were used in Mexico. The Court

held that, applicants' argument ignores the fundamental rule that activity outside the United States is ineffective to create rights in marks within the United States); La Societe Anonyme v. Patou, 495 F. 2d 1265 (2d Circuit 1974) (the Plaintiff had sold its goods in foreign countries. The Court noted that it is well settled that the foreign use is ineffective to create trademark rights in the United States, note 4); Rivard v. Linville 133 F. 3d 1446 (Fed Circuit 1998) (Plaintiff admitted that it did not offer the services in the United States, but operated only in Canada. The Court held that where a registrant had never used a mark in the United States and where the mark was registered on the basis of foreign counterpart registration that cancellation is proper if the mark was not used in the United States at 1448, 1449), Imperial Tobacco v. Philip Morris 899 F. 2d 1575 (Fed. Circuit 1990). (The Court found that the mark was abandoned for non-use, since the only evidence pertaining to the use of the mark was outside of the United States at 1583).

It is undisputed that Plaintiff does not use the mark in commerce. Sandor Winkler, the Plaintiff's representative was deposed, and testified that Palace does not operate in the U.S. Palace does not exist in the U.S. as an entity. Winkler deposition page 50. He testified that in the United States there is no entity entitled Palace Resort. Winkler deposition page 59. He further testified that there are no reservation offices in the United States, and that all phone calls are redirected to Panama where all the phones are answered. Winkler deposition page 64 and page 67.

The Plaintiff's failure to have an office in the United States, and provide services in the United States, constitutes abandonment of the mark, and the marks should be cancelled.

**The Plaintiff's ACPA claim is fatally flawed as it pertains to Vacation Store, Mendez, and Alvarez.**

The ACPA provides that "a person shall be liable for using a domain name under sub paragraph (A) **only** if that person is the domain name registrant or the registrant's authorized **licensee**." 15 USC. Section 1125 (d) (1) (D). Plaintiff acknowledges that the code provides that

only licensees are liable. The statute is very clear that only licensees are liable. Plaintiffs did not identify any parties as licensees. The failure to prove any allegation regarding whether the Defendants use the domain names as licensees warrants dismissal of the ACPA claim as to these Defendants. As noted in *Bird v. Parsons,* 289 F. 3d 865, 881 (6th Circuit 2001) "a fundamental and indeed fatal flaw exists in Bird's claim of cybersquatting against these Defendants. Bird's complaint contains no obligations that any of the Defendants are licensees. For these reasons Birds failed to state a claim under the ACPA against those Defendants". Plaintiff acknowledges that in addition to the registrant only licensees are liable under the ACPA. Plaintiffs acknowledge that they failed to allege that the Defendants, Vacation Tours, Rosanna Metz-Mendez, or George Alvarez were licensees. Plaintiffs offer no legal authority to support their claim that agents and licensees are the same under the ACPA. The reason for this is simple, there are no cases that say that. Consequently, as noted by the Court in Bird, the failure to allege that any of the Defendants were licensees is a fatal flaw requiring dismissal under the ACPA.

The evidence before this Court shows that Defendants have made fair use of Plaintiff's marks to accurately describe Plaintiff's hotels and resorts, for which Defendants legitimately offer and sell bookings. Plaintiff's conclusory allegations that such use purportedly exceeds permissible bounds fail in the face of this evidence.

"The fair use defense, in essence, forbids a trademark registrant to appropriate a descriptive term for its exclusive use and so prevent others from accurately describing a characteristic of their goods." *Int'l Stamp Art, Inc. v. U.S. Postal Serv.*, 456 F.3d 1270, 1274 (11th Cir. 2006) (citations omitted). "Nominative use," the particular form of fair use at issue here, occurs where "the only word reasonably available to describe a particular thing is pressed into service" and "lies outside the strictures of trademark law." *New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 308 (9th Cir. 1992). Nominative fair use permits "use [of]

another's mark truthfully to identify another's goods or services." *Setai Hotel Acquisitions, LLC v. Luxury Rentals Miami Beach, Inc.*, 16-21289-CIV, 2016 WL 7217730, at *2 (S.D. Fla. Dec. 9, 2016) (quoting *Bd. of Supervisors of the La. State Univ. v. Smack Apparel Co.*, 438 F. Supp. 2d 653, 662 (E.D. La. 2006)).

Nominative fair use exists where "(1) the plaintiff's mark is necessary to identify plaintiff's product; (2) in doing so defendant does not use more of plaintiff's mark than necessary; and (3) the defendant's conduct or language reflect[s] the true and accurate relationship between plaintiff and defendant's products or services." *Ford Motor Co. v. O.E. Wheel Distrib., LLC*, 868 F.Supp.2d 1350, 1368 (M.D. Fla. 2012). Additionally, fair use requires good faith; a defendant must not "intend[] to trade on the good will of the trademark owner by creating confusion as to the source of the goods or services." *Int'l Stamp Art*, 456 F.3d at 1274-75.

Defendants have demonstrated they are entitled to a nominative fair use defense. ***First***, without Plaintiff's marks, it is impossible to accurately identify Plaintiff's resorts to consumers, particularly in a single geographic area where there are numerous resorts owned by different companies. *See New Kids on the Block*, 971 F.2d at 308 ("It is no more reasonably possible … to refer to the New Kids as an entity than it is to refer to the Chicago Bulls, Volkswagens or the Boston Marathon without using the trademark."). ***Second***, Defendants use only the word marks (and, in limited instances, certain design marks) necessary to identify for consumers Plaintiff's hotels and resorts at which Defendants legitimately offer and sell rooms and vacation packages. ***Third***, Defendants' websites clearly and accurately reflect that they are an independent reseller of Plaintiff's goods and services. "Vacation Store Miami" is prominently displayed at the top of each webpage at the domains at issue, above any of Plaintiff's marks. *See* D.E. 68 at 2 (conceding that Defendants "websites includes [*sic*]

'Vacation Store Miami' at the top"); *see also New Kids on the Block*, 971 F.2d at 309 ("Where, as here, the use does not imply sponsorship or endorsement, the fact that it is carried on for profit and in competition with the trademark holder's business is beside the point."). ***Fourth***, this prominent display of Defendants' own mark demonstrates good faith, because it shows Defendants intend to identify the pages as their own, and not to trade on Plaintiff's goodwill or create confusion in the marketplace. *See Int'l Stamp Art*, 456 F.3d at 1275 ("The Postal Service has also provided affirmative evidence of good faith in showing that it prominently places its own familiar Eagle trademark on the backs of its stamp art products thereby identifying them as Postal Service products rather than the products of anyone else in the marketplace."); *Cosmetically Sealed Industries, Inc. v. Chesebrough-Pond's USA Co.*, 125 F.3d 28, 30 (2d Cir. 1997) ("[D]efendants' good faith [is] evidenced by the fact that the source of the defendants' product is clearly identified by the prominent display of the defendants' own trademarks.").

Defendants have submitted clear evidence that Defendants registered a substantial number of the domain names Plaintiff claims infringe its marks before Plaintiff made first use of those marks. Plaintiff now attempts to avoid the consequences of this evidence by asserting that re-registration of a domain name can give rise to an ACPA claim. *See* D.E. 70. This argument is unavailing because Plaintiff has failed to demonstrate that Defendants acted with the required bad faith intent.

Defendants can be liable for an Anticybersquatting Consumer Protection Act ("ACPA") violation only if they "(i) ha[ve] a bad faith intent to profit from [a] mark … and (ii) register[], traffic[] in, or use[] a domain name that … in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark." 15 U.S.C. § 1125(d)(1)(A). Thus, even if the statutory reference to "register[ing]" a domain encompasses "re-

registration," *Jysk Bed'N Linen v. Dutta-Roy*, 810 F.3d 767, 777 (11th Cir. 2015),  Plaintiff's

ACPA claim still fails because it cannot establish Defendants' "bad faith intent to profit." *See*

*Interstellar Starship Services, Ltd. v. Epix, Inc.*, 304 F.3d 936, 946 (9th Cir. 2002) ("A finding of

'bad faith' is an essential prerequisite to finding an ACPA violation.").

      The ACPA lists nine non-exclusive factors for courts to consider "[i]n determining

whether a person has a bad faith intent." 15 U.S.C. § 1125(d)(1)(B)(i); *see also Jysk*, 810 F.3d at

775–77.  Defendants' history of registration and use of the domains at issue precludes any finding

of bad faith intent under the relevant ACPA factors.  ***First***, Defendants made "prior use… of the

domain name[s] in connection with the bona fide offering of … goods and services." 15 U.S.C.

§ 1125(d)(1)(B)(i)(III). Specifically, Defendants used the domain names to legitimately sell

bookings at Plaintiff's resorts.  *See Interstellar Starship Services*, 304 F.3d at 947 (finding good

faith where Defendant "engaged in a bona fide use of his website," "continuously used the

domain name and invested money … as well as significant amounts of time on the development

of a viable business plan"). ***Second***, Defendants made "bona fide noncommercial or fair use of

the mark in a site accessible under the domain name." 15 U.S.C. § 1125(d)(1)(B)(i)(IV). As

explained in full in Defendants' Memorandum of Law In Support of Their Fair Use Defense,

Defendants used Plaintiff's marks solely to accurately identify Plaintiff's resorts, at which

Defendants offered bookings. *See Interstellar Starship Services*, 304 F.3d at 947 (finding good

faith where Defendant "adopted the domain name epix.com as a descriptive term to connote

electronic pictures"). ***Third***, Plaintiff presents no evidence of Defendants' "intent to divert

consumers from the mark owner's online location to a site … that could harm the good will

represented by the mark, either for commercial gain or with the intent to tarnish or disparage the

mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or

endorsement of the site."  15 U.S.C. § 1125(d)(1)(B)(i)(V).

Defendants' only intent in registering the domains at issue was to provide legitimate services to consumers, and Defendants' sites do not harm the marks' good will or suggest that Plaintiff is the source, sponsor, affiliate, or endorser of Defendants' sites. *Fourth*, any offers by Defendants to transfer the domains at issue did not occur "for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services." 15 U.S.C.          § 1125(d)(1)(B)(i)(VI). Defendants used the domain names to provide bookings at Plaintiff's resorts and offered transfers of the domains only after receiving Plaintiff's cease and desist letter, in an attempt to resolve the dispute with Plaintiff. *Fifth*, Plaintiff has presented no evidence that Defendants provided "material and misleading false contact information when applying for the registration of the domain name" or "intentional[ly] fail[ed] to maintain accurate contact information." 15 U.S.C. § 1125(d)(1)(B)(i)(VII). *Finally*, as Defendants' Memorandum in Support of Their Genericness Defense explains in full, Plaintiff's marks are generic and so "not distinctive and famous."    15 U.S.C. § 1125(d)(1)(B)(i)(VIX).

Additionally, the ACPA includes a "safe-harbor provision," which provides that "[b]ad faith intent … shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful." 15 U.S.C. § 1125(d)(1)(B)(ii). Defendants' registration, re-registration and use of the domains at issue falls well within this provision. For the reasons set forth in full in Defendants' Memoranda in Support of Their Fair Use, Laches, Acquiescence and Genericness Defenses, previously filed. Defendants believed that their use of the domain names was "a fair use or otherwise lawful," and as those memoranda demonstrate, Defendants' positions are reasonable and have support in the case law. *See Utah Lighthouse Ministry v. Found. for Apologetic Info. and Research*, 527 F.3d 1045, 1059 (10th Cir. 2008) (finding safe harbor

applied where Defendants believed their website was a parody and thus "reasonably believed that use of the domain names was legal"); *cf. Jysk*, 810 F.3d at 780 (finding defendant's registration was not in good faith where his belief that he was entitled to do so was "without basis … in law").

The evidence demonstrates that Plaintiff acquiesced repeatedly to Defendants' uses of the marks, but Plaintiff now seeks to avoid the consequences of its actions through invalid legal arguments.

Acquiescence exists where "(1) the plaintiff actively represented it would not assert a right or claim; (2) the delay between the active representation and assertion of the right or claim was not excusable; and (3) the delay caused the defendant undue prejudice." *U. of Alabama Bd. of Trustees v. New Life Art, Inc.*, 683 F.3d 1266, 1281 (11th Cir. 2012) (quoting *Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1207 (11th Cir. 2008)). "The difference between acquiescence and laches is that laches denotes passive consent and acquiescence denotes active consent." *Id.* As even Plaintiff recognizes, *see* D.E. 66 at 2, "'[a]ctive consent' does not necessarily mean an explicit promise not to sue. It only requires conduct on the plaintiff's part that amounted to an assurance to the defendant, express or implied, that plaintiff would not assert his trademark rights against the defendant." *Id.* at 1282.

Defendants have established the three required elements of acquiescence. ***First***, Plaintiff actively ***and repeatedly*** represented it would not assert these claims. Numerous communications from Plaintiff to Defendants from 2010 to 2014 reflect affirmative requests by Plaintiff for Defendants to update the webpages at the specific domains at issue to more effectively promote Plaintiff's properties. Any reasonable recipient would have understood such instructions to amount to an "assurance" that Plaintiff "would not assert his trademark rights" against the very webpages from which Plaintiff sought to and did profit.

## DEFENDANTS BELIEF THAT THE USE WAS LAWFUL

Defendants believed and had reasonable grounds to believe that the use of the domain names was lawful under ACPA. Defendant, Media Insight registered the domain names prior to any trademark registrations Alvarez owns incontestable trademarks incorporating Palace. Consequently, at the time of registration there was an absolute reasonable ground to believe that the use of the domain name was lawful.  Defendants engaged in a business relationship with the Plaintiff for over 18 years. Throughout that time, Plaintiff acknowledged the use of the domain names and web pages, made changes to the web pages, and authorized the use of the web pages. The Defendants believed, based upon the contracts and subsequent modifications of the web pages that the Plaintiff would not assert its trademarks rights against the Plaintiff.  The Defendants believed that the Plaintiff acquiesced in the use of the domain names, and acquiescence may be inferred from the trademark owners affirmative conduct towards the Defendant. The acquiescence led Defendants to believe that the use of the domain name was lawful. See also *Deere v. Femco Inc*. 239 F. Supp. 3d 965 (W.D. KY 2017) in discussing acquiescence and a belief that use was permitted.

From 2000 until 2014 the Plaintiff never complained about Defendant's use of the domain names or web pages. As indicated previously, in fact, Plaintiff encourages the use of the web pages to promote Plaintiff's hotels.  Throughout this time, numerous other web pages existed which were not owned by the Defendants, and which incorporated the identical trademarks.  As an example, Palaceresort.com is a domain name used  to promote a hotel in North Carolina.  Palace has never enforced its rights against any other web provider, and this lack of enforcement lead Defendants to believe that the Plaintiff, who does not own hotels in the Unites States and has never done business in the United States, had no interest in enforcing its rights against any United States

company.  As noted by the Deere Court, supra,  failure to assert rights amounted to an implied assertion that the trademark owner would not assert those rights.  The failure to assert said right is "intentionally misleading silence".   Thus, throughtout course of the business relationship, Defendants believed that the registration of the domain names was lawful.

In the Pensacola Motor Sales v. Eastern Shore Toyota case, the jury found that the Defendant had engaged in bad faith in registering the domain name, however the jury found that the Defendant believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful under the ACPA and awarded no damages.  The same exists here.  Although Defendants dispute this Court's finding liability, it believes that based upon the evidence, the Defendants have established  that they had reasonable grounds to believe that the use of the domain names was fair and otherwise lawful. The Court further stated that regardless of how many statutory factors the evidence established, a Defendant cannot be liable for registering or using a trademark if it believed and had reasonable grounds to believe that the use of the domain name was lawful.  Here, the overwhelming evidence establishes that the Defendants registered the domain names prior to the registration of the trademark, use the domain names in some circumstances for fourteen years to promote the Plaintiff's hotels, and received instructions on maintaining and modifying the web pages from the Plaintiff. Clearly, this establishes that the Defendant had a reasonable ground to believe that the use of the domain name was lawful.

Based on the totality of circumstances, this Court must find that the Defendants had reasonable grounds to believe that the use of the domain names were lawful that the Plaintiff is not entitled to damages.

## <u>DAMAGES ONLY APPLICABLE TO REGISTRANT</u>

If this Court believes that the Defendants did not have reasonable grounds to believe that the use was lawful, any damages must be limited to Media Insight pursuant to the ACPA.

The Plaintiff's ACPA claim is fatally flawed as it pertains to Vacation Store, Mendez and Alvarez.  The ACPA provides that "a person shall be liable for using a domain name under sub-paragraph (A) only if that person is the domain name registrant or the registrant's authorized licensee" 15 USC Section 1125 (d) (1) (D) Plaintiff has failed to present any evidence to the Court that Vacation Store, Mendez, Alvarez were authorized licensees. Failure to establish this relationship warrants dismissal of the ACPA.  *Bird v. Parson*s, 289 F. 3d 865, 881 (6th Circuit 2002) failure to approve that Defendants were licensees is a "fundamental and indeed fatal flaw" warranting dismissal of the claim.  The Court in B & F System Inc. v. Lloyd J. Le Blanc et. al. (M.D. Georgia 2012) held that the ACPA limits liability to persons who improperly register a domain name or if a user is that registrants authorized licensee.  The Court found that although a number of individuals were using the domain names, only registered users liable under the statute. As noted by the Court, the plain language of the statute limits liability to the registrant of the domain name. Here, Plaintiff failed to present any evidence that Vacation, Mendez, or Alvarez were authorized licensees under the statute, and therefore any damages must be limited to Media Insight, and the claims against Vacation, Mendez, Alvarez must be dismissed.

## EXCEPTIONAL CASES

Although Plaintiff argues that this is an exceptional case, Defendants had a reasonable belief that the use of the domain names was a fair use or otherwise lawful.  The fact that the Defendant has been found to have acted with "bad faith" that is required to trigger a violation of the ACPA does not mean that this automatically satisfies proof of the kind of willful or deliberate behavior required to make it an "exceptional case" for recovery of attorney's fees. See *People for Ethical Treatment for Animals v. Doughney* 263 F. 3d 359, 370, 60 USPQ 2d 1109 (4th Circuit 2001) holding that although bad faith for an ACPA violation was found, no attorneys fees were

awarded because of the Defendant had a reasonable belief that his use of the mark was lawful. The 11th Circuit has held that an award of fees may only be awarded in exceptional cases where an infringing party acts in a malicious, fraudulent, deliberate or willful manner. *Dieter. v. B & H Industry of S.W. Fla. Inc.* 880 F. 2d 322, 329 (11th Circuit 1989).

In the case before this Court, the Defendants had a relationship that extended over eighteen years. The Defendants had registered and used the website domains to sell hotel rooms with a full knowledge, consent, and approval of the Plaintiff. The Plaintiff would often send emails to the Defendants requesting changes to the web pages. Representatives of the Plaintiff would come to the offices of Vacation Store, review the web pages, and the representatives advised the Defendants that the use of the web pages were helping to generate business for the Plaintiff. Sandor Winkler, the Chief Operating Officer of the Plaintiff testified that high ranking officials of the Plaintiff were aware of the use the web pages throughout the years. He also testified that the Plaintiff's continued use of the trademarks would be permitted under an affiliate program agreement with Go Go Tours. Throughout the first fifteen years of their relationship, Plaintiff never demanded that the websites not be used. The prior business relationship established that the Defendants had a good faith belief that the use of the domain names were lawful, and this relationship weighs heavily against this case being an exceptional case.

Finally, questions exist as to the legitimacy of the trademarks. There is currently a pending Petition to Cancel the trademark. The Plaintiff fraudulently claimed that the marks would be used on hotels in the United States. The marks have never been used in the United States. There are no hotels in the United States, the Plaintiff does not do business in the United States. Finally, the Plaintiff sustained no damages as a result of the use of the domain names, and, recognizing that it would be unable to prove any lost income, abandoned its damage claim, and instead of seek only statutory remedies. Thus, this Court should find that this is not an exceptional case in which

attorneys fees are warranted.

## ATTORNEYS FEES

Since the Plaintiff has convinced this Court to forego a trial, and advised this Court that no evidence would be necessary and that the damage part of this case could be decided upon legal argument, the Plaintiff has failed to establish that the actions of the Defendants were malicious, fraudulent, deliberate, or willful.  The Plaintiff, after convincing this Court that the taking evidence was not necessary, realized its mistake, and has submitted 63 exhibits in an attempt to establish elements necessary for this Court to determine that this is an exceptional case warranting attorneys fees. There are no circumstances under which this Court can accept the proposed evidence as admissible. Consequently, this Court, based upon the record, cannot find that the actions were malicious, fraudulent, deliberate, or willful thereby entitling the Plaintiff to attorneys fees. See *Burger King Corp. v. Pilgrim's Pride Corp*. 15 F. 3d 166 (11th Circuit 1994).  The parties seeking fees bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates. *ACLU v. Barnes 168 F. 3d 423, 427* (11th Circuit 1999). Reasonable hourly rates are to be measured by the prevailing market rates in the community. *Blum v. Stenson* 465 U.S. 886, (104 Supreme Court 1541, 1984) the party seeking fees has the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates. Loranger v. Stierheim 10 F.3d 776 (11th Circuit 1994). By satisfactory evidence, the Court requires "more than the affidavit of the attorney performing the work". *Norman v. Housing Authority of Montgomery* 836 F. 2d 1292, 1299 (11th Circuit 1988).

Plaintiff has failed to satisfy its burden. Plaintiff has filed affidavits of lead counsel, Enrico Schaefer, and of local counsel Ari Tenzer, and Laura Reich. Local counsel's fees exceed $ 500,000.00. Clearly a self-serving affidavit by local counsel does not satisfy the burden of establishing entitlement for appropriate hours and rates for local counsel. Additionally, a review

of the hours included administrative items, clerical work, hours by local counsel reviewing prior work. None of these hours are entitled to be reimbursed.

More importantly, the Plaintiff elected initially to bring this lawsuit on behalf of Heron. The ACPA claim by Heron was ultimately dismissed in November of 2017. Plaintiff elected to dismiss the remaining claims by Heron, and all claims by Palace other than as to the ACPA.

Plaintiff is not entitled to recover any time spent litigating on behalf of Heron. Having been dismissed from the case for lacking standing, the Plaintiffs have no basis for recovery for any time spent on behalf of Heron. Heron was not a prevailing party, did not prevail in its ACPA claim, and there is no evidence that the Defendants were liable to Heron for any damages.

As to all claims made by Palace other than the ACPA, Palace is not entitled to attorneys fees, since those claims were dismissed.  The time sheets filed by the attorneys failed to address those items specifically related to the ACPA claim as opposed to the claims in general. Consequently, the Plaintiff may not seek attorneys fees on any claims on which is was unsuccessful. Having failed to delineate the claims, Plaintiff has failed to meet its burden in establishing entitlement and documenting the appropriate hours and hourly rates. See ACLU, supra at 427.

Finally, having decided to proceed without taking evidence has deprived the Defendant from eliciting testimony to examine the time sheets of the various attorneys, and since the Plaintiff failed to provide an expert testimony, this Court should deny in total the Plaintiff's claim for attorneys' fees.

## **CONCLUSION**

This is not an exceptional case. The evidence suggests that this is not a case at all. The Defendants had a good faith belief that their actions were reasonable and lawful. For over 15 years Plaintiff was aware of the use of the domain names, encouraged the use of the domain names to

promote the Plaintiff's hotels,  and made changes to the web pages when Plaintiff believed that the changes would benefit the Plaintiff.

Trademarks were not registered until years after the domain names were registered. The trademarks are currently the subject of the Petition to Cancel based upon their abandonment and fraudulent use. The Plaintiff has never, contrary to the representations in the application, used the marks in the United States. Additionally, the Plaintiff made disclaimers as to the marks, in particular disclaiming all geographic terms and descriptive terms in the marks.  Consequently, any domain name that used the disclaimed marks is not a violation of the ACPA, since the trademark office has determined that those disclaimed sections of the marks are not protected.  Consequently, there is also no legal basis for the transfer of the marks or the entry of an injunction prohibiting the registration of all of the domain names that use parts of the marks.

The claims against Vacation, Mendez, and Alvarez should be dismissed.  The ACPA applies only to the registrant of the marks or their authorized licensee. Plaintiff has failed to plead or prove that Vacation, Mendez and Alvarez were authorized licensees of Media. As a result, no damages may be entered against Vacation, Mendez, or Alvarez under the ACPA.

Since the Plaintiff entered disclaimers, Media can be held liable only for the use of the exact trademark, since that is all that has been protected under the trademark application. Media has no liability for variation for using combinations of the words since the trademark office gave limited trademark use. Consequently, there are no violations of the trademarks by Media, and Plaintiff is not entitled to any statutory damages from Media for the violation of the trademarks.

Plaintiff is not entitled to attorneys' fees from Vacation, Mendez, or Alvarez, since they are not the registrants of the marks, and have no liability under the ACPA. Plaintiff has failed to produce competent evidence in support of the attorney's fees. Plaintiff, contrary to the requirements of the 11th Circuit has failed to provide expert opinion as the reasonableness of the

amount and hours of attorneys' fees. Additionally, the Plaintiff seeks attorneys' fees for representing Heron, a party who had no standing and who was dismissed from this action. Consequently, any time billed prior to November 2017, the date that this Court allowed Plaintiff to amend the Complaint to include Palace must be stricken. Heron was not a prevailing party under the ACPA, and therefore Plaintiff is not entitled to any attorneys fees for any representation of Heron. Additionally, this Court should strike the attorneys fees for Tenzer and Reich, local counsel. Their work constituted clerical work, such as, filing, arranging meetings, reviewing the work prepared by Enrico Schaefer, lead counsel. Additionally, Schaefer, Tenzer, and Reich seeks fees for working on an appeal. The appeal is currently pending and the Appellate Court in the 11th Circuit has indicated now on two separate occasions its inclination to enter an Order dissolving the injunction as moot in light of the lack of standing of Heron, and the dismissal of Heron from the case.  Thus, there is no legal basis for the recovery of fees for working on an appeal.

This Court should strike all of Plaintiff's evidence. Plaintiff represented to this Court that no evidence would be needed, and that this Court's decision would be based solely upon legal argument. Plaintiff in its Trial Brief and Closing Arguments submitted 63 exhibits without establishing their admissibility. Having made the argument that no evidence would be needed, this Court cannot now except the evidence submitted by the Plaintiff, since the evidence lacks relevancy, proper foundation, and constitutes hearsay. Defendants are prejudiced by this Court's denial of a jury trial or damages and further prejudiced in this Court accepts Plaintiff's evidence.

WHEREFORE, Defendants request that this Court enter an order finding that this case is not an exceptional case, that Vacation, Mendez, and Alvarez were not the registrants of the domain names, nor the authorized licensee and are therefore dismissed from the claim, that all of the attorneys fees related to Heron be denied, that if this Court determines that attorneys fees are warranted, that they be limited to time spent by Enrico Schaefer working on Count I of the

Complaint from November of 2017 to the present, and awarding no other fees, denying the entry of a permanent injunction or the transfer of the domain names in light of the trademarks being limited by Plaintiff's acquiescence to entering a disclaimer with the trademark office, and limiting the use of the trademark to be specific mark and waiving any right to the individual terms in the mark, thus prohibiting Plaintiff from claiming rights to moon, golf, spa, beach, sun, Cozumel, Cancun, and Isla Mujeres.

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served by electronic mail on this 6th day of September, 2018 on all counsel or parties of record on the Service List below.

By:   /s James S. Robertson, Esq.
      James S. Robertson, Esq.
      420 South Dixie Highway, 3rd
      Floor Coral Gables, FL 33146
      Tel: (305) 667-0223
      Fax: (305) 284-9844
      JRobertson@gaebemullen.com

<u>**SERVICE LIST**</u>

| | |
|---|---|
| Laura Reich, Esq.,<br>Reich Rodriguez, PA.,<br>9999 NE 2nd Avenue<br>Suite 204<br>Miami Shores, Florida 33138<br>*Attorneys for Plaintiff* | TRAVERSE LEGAL, PLC<br>Enrico Schaefer, Esq.<br>*Admitted Pro Hac Vice*<br>810 Cottageview Drive, Unit G-20<br>Traverse City, MI 49684<br>Tel: (231) 932-0411<br>Fax: (231) 932-0636<br>enrico@traverselegal.com<br>*Attorneys for Plaintiff* |