UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 16-20683-CIV-MORENO

HERON DEVELOPMENT CORPORATION,
and PALACE RESORTS, S.A. de C.V.,

    Plaintiff,

vs.

VACATION TOURS, INC., MEDIA
INSIGHT GROUP, INC., ROSANNA M.
MENDEZ and GEORGE A. ALVAREZ,

    Defendants.
_____/

## TRIAL ORDER

This is a three-year old intellectual property dispute between Plaintiff Palace Resorts, S.A. de C.V. ("Palace Resorts")[1], the owner of certain hotel- and resort-related trademarks, and Defendants Vacation Tours, Inc., Media Insight Group, Inc., Rosanna M. Mendez, and George A. Alvarez (collectively, "Defendants"), regarding Defendants registration of domain names that infringe upon Plaintiff's protected marks. On the eve of trial, the Court granted Plaintiff's Motion for Partial Summary Judgment, finding in favor of Plaintiff on its Anticybersquatting Consumer Protection Act ("Anticybersquatting Act") claim. Plaintiff subsequently dismissed all of its remaining claims. Having done so, the case was scheduled to proceed as a bench trial for the determination of statutory damages and other non-jury damages, only. At the Calendar Call, however, the Court—agreeing with Plaintiff's suggestion—determined that the case need not proceed to trial, and instead directed the parties to submit briefs on the following issues: (1)

---

[1] Plaintiff filed this brief on behalf of both Palace Resorts and Heron Development Corporation, but as explained below, Heron is no longer a party to this case and the Court will only consider the brief on behalf of Palace Resorts. *See infra* n.2.

Plaintiff's request for a permanent injunction ordering the transfer of all infringing domain names pursuant to 15 U.S.C. § 1125(d); (2) Plaintiff's entitlement to statutory damages under 15 U.S.C. § 1117(d); and (3) whether the case is "exceptional" under 15 U.S.C. § 1117(a) so as to warrant an award of attorneys' fees and costs. The parties did so.

For the reasons discussed below, this Court finds that Plaintiff is entitled to injunctive relief, statutory damages, and reasonable attorneys' fees and costs.

I. BACKGROUND

    A. Parties and Relevant Non-Parties

        *1. Plaintiff*

            a.    **Palace Resorts, S.A. de C.V. ("Palace Resorts" or "Plaintiff")**

Palace Resorts is a Mexican corporation in the hospitality industry. It owns and operates hotels, resorts, and spas, and sells wedding, meeting, and vacation packages. Heron currently holds the exclusive license to use, enforce, and protect certain Palace Resorts trademarks in the United States.

        *2. Former Plaintiff[2]*

            a.    **Heron Development Corporation**

Heron is a Panamanian company with its principal place of business in Panama City, Panama. It is a wholesale commercial retailer of unsold resort inventory for resorts in Mexico and the Caribbean, including the following properties owned by Palace Resorts:

---

[2] Heron Development Corporation ("Heron") was the original plaintiff in this case. On November 30, 2017, in its Order Granting in Part and Denying in Part Defendants' Motion to Dismiss the Verified Second Amended Complaint, the Court dismissed Count I—the Anticybersquatting Act claim—as to Heron for lack of standing. Plaintiff Palace Resorts, only, subsequently moved for partial summary judgment on that claim, which the Court granted. Heron and Palace Resorts then moved to dismiss the remaining claims, which the Court also granted. Consequently, Heron no longer had any claims pending in the case. Heron is therefore no longer a party to this case.

2

(1) Beach Palace – located in Cancun, Mexico (opened October 1985);

(2) Cozumel Palace – located in Cozumel, Mexico (opened in May 2005);

(3) Isla Mujeres Palace – located in Isla Mujeres, Mexico (opened in January 2007);

(4) Le Blanc Spa Resort – located in Cancun, Mexico (opened in August 2005);

(5) Moon Palace Gold & Spa Resort – located in Cancun, Mexico (opened January 1997);

(6) Moon Palace Jamaica Grand – located in Ocho Rios, Jamaica (opened in June 2015);

(7) Playacar Palace – located in Playa del Carmen, Mexico (opened in December 2005); and

(8) Sun Palace – located in Cancun, Mexico (opened in December 1990).

Heron and Palace Holdings entered into an exclusive license agreement on December 5, 2015. The contract granted Heron an exclusive license to use certain trademarks owned by Palace Holdings in the United States for the purpose of marketing and promoting the eight resort properties listed above. The licensing agreement also granted Heron the exclusive right to enforce and protect the trademarks from dilution and infringement in the United States. On February 1, 2016, Palace Holdings assigned the trademarks as well as the licensing agreement with Heron to Palace Resorts.

*3. Relevant Non-Party*

a. **Palace Holding, S.A. de C.V. ("Palace Holdings")**

Palace Holdings is a Mexican corporation in the hospitality industry. It owns and operates hotels, resorts, and spas, and sells wedding, meeting, and vacation packages. Although not a party to this case, it has conducted business with Plaintiff and Defendants at various times. Defendant

Vacation Tours, Inc. previously had a wholesaler relationship with Palace Holdings until Palace Holdings terminated the agreement in 2014. Palace Holdings previously licensed the trademarks at issue in this case to heron. However, in February 2016, Palace Holdings assigned those trademarks and the licensing agreement to Palace Resorts, S.A. de C.V.

### 4. Defendants
#### a. Vacation Tours, Inc. ("Vacation Store")

Vacation Tours, Inc.—which operates as "Vacation Store of Miami" and "Vacation Store"—is a Florida corporation with its principal place of business in Coral Gables, Florida. For a period of time, Vacation Store maintained a wholesaler relationship with Palace Holdings.

#### b. Media Insight Group

Media Insight Group, Inc. is a Florida corporation with its principal place of business in Miami Beach, Florida. It is the registrant of forty domain names that infringe Palace Resorts' trademarks.

#### c. George A. Alvarez

George A. Alvarez is the registered agent and officer/director of Media Insight.

#### d. Rosanna M. Mendez

Rosanna M. Mendez is an officer/director of Media Insight and Vacation Store.

## B. Summary of Facts

Around 2008, Defendants began a marketing, advertising, and reservation referral service. Reservation referral services often have multiple wholesaler commission-based business relationships with hotels, resorts, and other travel-service providers. For every referral-service customer who ultimately purchases a vacation package or books the hotel, the referral service receives a commission payment.

On June 10, 2012, Vacation Store and Palace Holdings entered into the most recent wholesaler contract and addendum ("Final Contract") that specified rates and terms for booking

rooms at properties owned and operated by Palace Resorts. The Final Contract prohibited the unauthorized use or reproduction of Palace Holdings' trademarks and listed infringement—including the use of confusingly similar domain names—as grounds for terminating the Final Contract.

At some point, Media Insight began registering the 40 domain names listed in the chart below, all of which include the exact name, or a slight variation, of a Palace Resorts property. Vacation Store uses Media Insight's domain names to operate live websites—designed to resemble authentic Palace Resorts websites—to market its reservation referral business and sell travel services to consumers. Notably, Vacation Store sells reservations at Palace Resorts properties through these domain names without any authorization from, or affiliation with, Palace Resorts.

The following chart lists the thirteen trademarks owned by Plaintiff, their registration and incontestability information, and the Infringing Domain Names registered and used by Defendants to market and sell travel products and services.

| Palace Resort Corporation's Trademarks | Registration & Incontestability | Defendant's Allegedly Infringing Domain Names |
|---|---|---|
| 1. BEACH PALACE | Reg. no. 3622187, (Registered on May 19, 2009) (Incontestable on May 19, 2015) | 1. beachpalacecancunhotel.com<br>2. beachpalacecancunresort.com<br>3. beachpalace.tv<br>4. beachpalacegrand.com |
| 2. COZUMEL PALACE | Reg. no. 3154935, (Registered on Oct. 10, 2006) (Incontestable on Oct. 21, 2011) | 5. palacecancunhotel.com<br>6. palacecozumel.com |
| 3. ISLA MUJERES PALACE | Reg. no. 3611002, (Registered on Apr. 28, 2009) (Incontestable on May 20, 2015) | 7. islamujerespalace.com<br>8. islamujerespalacegrand.com<br>9. palaceislamujeres.com<br>10. islamujerespalaceresort.com |
| 4. LE BLANC BED | Reg. no. 3790516, (Registered on May 18, 2010), (Incontestable on May 16, 2010) | 11. leblanc-cancun.com<br>12. leblanc-hotel.com |

5

| | | |
|---|---|---|
| 5. LE BLANC SPA RESORT | Reg. no. 3160152, (Registered on Oct. 17, 2006) (Incontestable on Nov. 29, 2011) | 13. leblancancunspa.com<br>14. leblanccancunresort.com<br>15. leblancresortspa.com |
| 6. MOON PALACE | Reg. no. 2453148, (Registered on May 22, 2001), (Incontestable on May 18, 2007) | 16. moonpalacecancunresort.com<br>17. moonpalacepuntacanahotel.com<br>18. moonpalaceresortpuntacana.com<br>19. moonpalacepuntacanaresort.com<br>20. moonpalacejamaicagrand.com<br>21. moonpalacejamaicaresort.com<br>22. moonpalaceochorios.com<br>23. moonpalacerivieramaya.com |
| 7. MOON PALACE GOLF & SPA RESORT | Reg. no. 3611003, (Registered on Apr. 28, 2009), (Incontestable on May 19, 2015) | |
| 8. MOON SPA & GOLF CLUB | Reg. no. 3611001, (Registered on Apr. 28, 2009), (Incontestable on May 22, 2015) | |
| 9. PALACE RESORTS | Reg. no. 3738725, (Registered on Jan. 19, 2010), (Incontestable on Jan. 19, 2016) | 24. palacejamaicagrande.com<br>25. palaceresortsguide.com<br>26. xpu-hapalaceresort.com |
| 10. PLAYACAR PALACE | Reg. no. 3163633, (Registered on Oct. 24, 2006), (Incontestable on Oct. 24, 2011) | 27. palaceplayacar.com<br>28. playacarpalace.com<br>29. playacarpalacegrand.com<br>30. playacarpalaceresort.com<br>31. palaceplayacarresort.com |
| 11. SUN PALACE | Reg. no. 3622188, (Registered on May 19, 2009), (Incontestable as of May 19, 2015) | 32. sunpalacecancunresort.com<br>33. sunpalaceresort.com<br>34. sunpalace.tv |
| 12. CANCUN PALACE | Serial no. 86659415 | 35. palacecancunresort.com<br>36. cancunandbeachpalace.com<br>37. cancunpalace.tv |
| 13. CANCUN PALACE | Serial no. 86656713 | 38. cancunpalacelasamericas.com<br>39. cancunpalacespecials.com<br>40. palacecancun.com |

On March 14, 2014 Palace Holdings' lawyer sent a letter to Vacation Store and Rosanna Mendez terminating the Final Contract because of Vacation Store's use of the infringing domain names. According to Palace Holdings, the use of these domain names violated the Final Contract's

intellectual property restrictions. Five days later, Palace Holdings' lawyer sent a second letter demanding that Vacation Store cease and desist using Palace Holdings' protected marks.

Vacation Store did not comply with Palace Holdings' requests. Rather, it responded on April 1, 2014 by sending Palace Holdings a proposed domain names license agreement. The proposed agreement sought payment from Palace Holdings in exchange for transferring the challenged domain names, or permitting the company to use those domain names. Palace Holdings declined.

Palace Holdings' counsel sent Mendez and Alvarez, as representatives of Vacation Store and Media Insight, a final cease and desist letter on June 15, 2015. This letter cited Defendants' intellectual property infringements and detailed seven instances of actual customer confusion resulting from Defendants' use of the domain names at issue. Defendants refused to comply. On February 1, 2016, Palace Holdings assigned "all of its rights, interests, and obligations in and to the Palace Resort Marks and the License Agreement" to Palace Resorts. (Second Am. Compl. ¶ 22.) The assignment also transferred the licensing agreement with Heron to Palace Resorts.

### C. Procedural History

Heron Development Corporation filed this intellectual property lawsuit against Defendants three years ago, alleging violations of the Anticbyersquatting Consumer Protection Act, the Lanham Act, Florida's trademark statutes, and Florida's Deception and Unfair Trade Practices Act. Defendants moved to dismiss the case, and shortly thereafter, Heron moved for a preliminary injunctive order on its Anticybersquatting Act claim. The Court granted Defendants' motion to dismiss with leave to amend and subsequently entered the preliminary injunction against Defendants. The injunction prohibited Defendants from registering additional infringing domain

names and requiring Defendants to change the existing settings on the Infringing Domain Names to forward website traffic to Palace Resort's webpage.

Almost a year later, at a hearing before the Court on pending matters in the case, Heron made an *ore tenus* motion for leave to file a Second Amended Complaint, adding Palace Resorts as a Plaintiff. The motion was granted, and Defendants subsequently moved to dismiss. The Court granted in part and denied in part Defendants' motion, dismissing Heron, only, for lack of standing to bring claims arising under the Anticybersquatting Act, the Lanham Act, and Florida trademark infringement statutes and dismissing both Plaintiffs for dilution claims arising under the Lanham Act and Florida statutes.

Plaintiff Palace Resorts then moved for partial summary judgment on its claim arising under the Anticybersquatting Act. The Court granted the motion ("June 12, 2018 Order on Summary Judgment"), entering judgment as a matter of law in its favor. Shortly thereafter, on the eve of trial, Palace Resorts and Heron Development moved jointly to dismiss all remaining claims. The Court granted the motion, leaving only the issue of Palace Resorts' entitlement to statutory damages under the Anticybersquatting Act claim and other non-jury damages, such as attorneys' fees and costs. At the Calendar Call, the Court determined—at Plaintiff's suggestion—that the case need not proceed as a bench trial on the issue of damages, and instead directed that the parties submit trial briefs on the following issues: (1) Plaintiff's request for a permanent injunction ordering the transfer of all infringing domain names pursuant to 15 U.S.C. § 1125(d); (2) Plaintiff's entitlement to statutory damages under 15 U.S.C. § 1117(d); and (3) whether the case is "exceptional" under 15 U.S.C. § 1117(a) so as to warrant an award of attorneys' fees and costs. Each is addressed below in turn.

## II. ANALYSIS

### A. Procedural Issues

Before addressing the pending substantive arguments, the Court will address the parties' procedural issues.

#### 1. Waiver of Jury Trial

Defendants contend that "[t]his Court improperly denied Defendants the right to [a] jury trial," and that "even though the Plaintiff is seeking [only] statutory damages," a jury trial is still warranted. (D.E. 271, at 2.) Plaintiff argues that Defendants waived their right. The Court agrees.

Federal Rule of Civil Procedure 38 "provides for a jury trial only where the right is 'declared by the Seventh Amendment to the Constitution' or 'provided by a federal statute.'" *FN Herstal SA v. Clyde Armory, Inc.*, 838 F.3d 1071, 1088 (11th Cir. 2016) (quoting Fed. R. Civ. P. 38(a)). "[W]hen a jury trial is demanded, the action must be tried by a jury on all issues so demanded 'unless . . . the court, on motion or on its own, finds that on some or all of those issues there is no federal right to a jury trial.'" *Id.* (11th Cir. 2016) (quoting Fed. R. Civ. P. 39(a)(2)). Whether the right to a jury trial exists "turns on whether the claims were historically cognizable at law or considered equitable." *Id.* (citing *Phillips v. Kaplus*, 764 F.2d 807, 813 (11th Cir. 1985)). A jury trial is generally preserved for legal claims, but no jury trial is mandated for those claims which are considered equitable. *Id.*

Although it is true that Plaintiff's claims for legal relief—*i.e.*, statutory damages—would otherwise entitle Defendants to a jury trial, Defendants have waived this right by failing to preserve it at the Calendar Call. "[T]he right of a jury trial is fundamental, [and courts must] indulge every reasonable presumption against waiver." *U.S. Medical Neuroscience Investments, LLC v. Morton Plant Medical Hospital Association, Inc.*, No. 8:09-cv-00464-T-24MAP, 2009 WL 1067115, at *1 (M.D. Fla. Sept. 16, 2009) (quoting *Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393 (1937)) (internal

9

quotations omitted). "But the right to jury trial, like the right to assistance of counsel in a criminal trial, may be waived, and in a civil case a waiver is shown by mere acquiescence, when the party or his counsel if [*sic*] present and not objecting." *Bass v. Hoagland*, 172 F.2d 205, 209 (5th Cir. 1949). Here, Defendants were present and active at the July 17, 2018 Calendar Call, where the parties discussed with the Court how the case should proceed given that only the issues of injunctive relief, statutory damages, and attorneys' fees under the Anticybersquatting Act remained pending. Plaintiff presented to the Court that the case need only proceed as a bench trial or, in the alternative, on trial briefs. While Defendants argued in favor of a live bench trial, they never once raised the issue of a *jury* trial. In fact, having performed a search of the transcript for that proceeding, the parties never even used the word "jury." (D.E. 279.)

Accordingly, the Court finds that Defendants clearly and unequivocally waived their right to a jury trial by failing to raise, or otherwise object to, the issue at the Calendar Call.

### 2. Admissibility of Evidence

Defendants broadly argue that Plaintiff's trial exhibits are inadmissible as irrelevant, hearsay, lacking foundation, and improper summaries. The Court, however, need not consider these objections. Had Plaintiff proceeded with its claim for actual damages, the evidence would be relevant to the Court's analysis. But given that the Court has broad discretion to award statutory damages and attorneys' fees within the confines of the statutes below, it need not resolve the evidentiary issues as it will not rely on the disputed evidence.

## B. Substantive Issues

### 1. The Transfer of All Infringing Domain Names to Plaintiff

As a remedy, the Anticybersquatting Act provides that "[i]n any civil action involving the registration, trafficking, or use of a domain name under this paragraph, a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of

10

the mark." *See* 15 U.S.C. § 1125(d)(1)(C). Defendants having been found liable under the Anticybersquatting Act, Plaintiff requests that this Court order the transfer of all Infringing Domain Names to Plaintiff and enter a permanent injunction against further interference and infringement of Palace Resorts' trademark-protected resort names.[3]

Finding Plaintiff's request for transfer to be appropriate and commensurate with Defendants' actions, Defendants are ordered to transfer all forty (40) of the Infringing Domain Names to Plaintiff Palace Resorts within fourteen (14) days of the date of this Order. With respect to Plaintiff's request that the Court permanently enjoin Defendants from any further infringement of Palace Resorts' trademarks, however, the Court declines to do so. Case law establishes that a "[a] plaintiff who seeks a permanent injunction [under 15 U.S.C. § 1125(d)(1)(C)] must show (1) it has suffered irreparable injury; (2) remedies at law are inadequate to compensate for that injury; (3) a remedy in equity is warranted in light of balancing the hardships between the plaintiff and defendant; and (4) the public interest would not be disserved by a permanent injunction." *Taverna Opa Trademark Corp. v. Ismail*, No. 08-20776-CIV-HOEVELER, 2010 WL 1838384, at *3 (S.D. Fla. May 6, 2010) (citing *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 390 (2006)). While the facts of the case would likely support entry of a permanent injunction, Plaintiff has failed to analyze, or otherwise mention, any of the requisite factors and the Court will not engage in the analysis on its behalf. For this reason, Plaintiff's request for a permanent injunction prohibiting

---

[3] Plaintiff also requests that the Court allow an amendment of the pleadings to reflect eight additional, recently discovered infringing domain names: MoonPalaceGrandResort.Com; MoonPalace-Resort.Com; BeachPalaceGrandResort.Com; MoonPalaceCancunHotel.Com; PalaceHotelResort.Com; PalacePlayacarResorts.Com; PuntaCanaMoonPalace.Com; and IslaMujeresSpecials.Com. At this stage of litigation—having already found liability on the originally pleaded Infringing Domain Names—the Court finds it inappropriate to allow the amendment of the pleadings to add the eight additional domains. Moreover, the Plaintiff does not provide any analysis as to the additional eight names under the prongs of the Anticybersquatting Act, such that the Court could even consider them for the purpose of awarding statutory damages or injunctive relief.

Defendants from any further interference and infringement of Palace Resorts' trademark-protected resort names is denied.

### 2. Award of Statutory Damages Under 15 U.S.C. § 1117(d)

"In a case involving a violation of section 1125(d)(1) of this title, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits, an award of statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just." *See* 15 U.S.C. § 1117(d). Here, Plaintiff has elected to do so. (D.E. 244, at 4) ("Plaintiffs are electing to move forward on Count I seeking a bench trial on statutory damages. . ."). The statutory damages provision is intended to "deter wrongful conduct and to provide adequate remedies for trademark owners who seek enforce their rights in court." *PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1221 (S.D. Fla. 2004) (citations omitted). "District courts have wide discretion in awarding statutory damages." *Id.* at 1219 (citing *Cable/Home Comm. Corp. v. Network Prod., Inc.*, 902 F.2d 829, 852 (11th Cir. 1990)) (addition citations omitted).

Plaintiff seeks $100,000, the maximum amount available, per Infringing Domain Name, for a total of $4,800,000. Plaintiff submits that this amount is justified because Defendants' infringement was willful, the duration of the infringement was lengthy, and the harm has been substantial. In its June 12, 2018 Order granting summary judgment, the Court found Defendants' conduct unquestionably violated the Anticybersquatting. To that end, the Court specifically found that that the evidence overwhelmingly indicated that Defendants registered and used the Infringing Domain Names with a bad-faith intent to profit off of Palace Resorts' trademarks and corresponding goodwill. The Court analyzed the relevant "bad faith" factors, finding the following:

> First . . . Defendants have no intellectual property rights in Palace Resorts' trademarks, but still incorporated those marks in their registered domain names. Second, none of the infringing domain names consist of the legal name of any of the Defendants. Third, Defendants use the domain names in commerce to divert web traffic and profits from Palace Resorts. Fourth, given the cease and desist letters sent to Defendants in response to their infringing use, and Defendants' efforts to mimic the appearance of authentic Palace Resorts websites, it is clear that Defendants registered and used the domain names with knowledge that doing so would harm Palace Resorts and the value of its trademarks. Fifth, after receiving multiple cease and desist letters, Defendants sent Palace Holdings a domain names license agreement seeking payment from Palace Holdings for a transfer or use of the infringing domain names. Sixth, Defendants registered at least forty domain names that were intentionally identical or confusingly similar to Palace Resorts' distinctive marks. Accordingly, Palace Resorts has shown that Defendants acted in bad faith as defined by the Anti-Cybersquatting Act.

(D.E. 240, at 17.)

Furthermore, the harm to Plaintiff has been substantial. Defendants contend that Plaintiff did not suffer any harm and rely on Plaintiff's abandonment of their damages claim as evidence of Plaintiff's concession on that point. But the harm Defendants' caused transcends financial damages. As mentioned above, the Court expressly found in its June 12, 2018 Order on Summary Judgment that Defendants benefitted from, and ultimately tarnished, Plaintiff's goodwill. More specifically, the Court found that "Defendants' [bad-faith] efforts to mimic the appearance of authentic Palace Resorts websites [was done with] . . . knowledge that doing so would harm Palace Resorts and the value of its trademarks." (D.E. 240, at 17.) Furthermore, the Court also found that there had been "multiple instances of *actual* customer confusion where the customer believed he booked his reservation through Palace Resorts' website, when in fact he booked his reservation through Defendants' website on one of the . . . [infringing] domain names." (*Id.*) And as Plaintiff

explains, in operating the infringing domains Defendants "can offer poor customer services without accountability if the customer blames the resort and not [Defendants]." (D.E. 270, at 33.)

For these reasons, and for all the reasons set forth in the Order on summary judgment, the Court concludes that Plaintiff Palace Resorts is entitled to $10,000 per domain name, for a total of $400,000.

### a. Defendants' Arguments and the "Safe Harbor" Provision of the Anticybersquatting Act

Defendants' brief is almost entirely, as Plaintiff's anticipated, an attempt to relitigate previously decided issues. Defendants effectively ask this Court to reverse its summary judgment Order and reconsider its dismissal of Defendants' affirmative defenses. First, the Court has already denied Defendants' Motion for Reconsideration of its Order on Summary Judgment and will not now re-address the issue of Defendants' liability under the Anticybersquatting Act. (D.E. 261.)

Next, to quote itself on the issue of Defendants' affirmative defenses:

> . . .this Court has already rejected: (i) genericness; (ii) fair use; (iii) acquiescence; (iv) laches; and (v) prior use. Magistrate Judge John J. O'Sullivan thoroughly addressed and dismissed each of these affirmative defenses in his Report and Recommendation on Plaintiff's Motion for Preliminary Injunction, which this Court adopted. (D.E. 94 at 17-32.) Defendants have offered no evidence to alter Judge O'Sullivan's analysis or his conclusions, so this Court need not explain for a [third] time why Defendants' defenses lack merit. Because Judge O'Sullivan's determinations apply with equal force today, Defendants' affirmative defenses fail.

(D.E. 240, at 17.)

Defendants do, however, raise one novel argument: protection under the "Safe Harbor" provision of the Anticybersquatting Act, which provides that bad faith intent "shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was fair use or otherwise lawful." 15 U.S.C. §

1125(d)(1)(B)(ii). Defendants argue that the facts support that they had an "objectively reasonable belief that the registration and use of the domain names was fair use or otherwise lawful." (D.E. 271, at 19.) Unfortunately, Defendants "cannot simply deny that [they] had any bad faith intent, since doing so would allow any cybersquatter to use the safe harbor provision to frustrate Congress' purpose by artificially limiting the statute's reach." *Victoria's Cyber Secret Ltd. Partnership v. V Secret Catalogue, Inc.*, 161 F. Supp. 2d 1339, 1353 (S.D. Fla. 2001) (citing *Virtual Works, Inc. v. Volkswagen of America, Inc.*, 238 F.3d 264, 270 (4th Cir. 2001)). As has been previously discussed at length, the evidence and totality of the circumstances are clear that Defendants operated with bad faith intent to profit from Plaintiff's protected marks. "A defendant who acts even *partially* in bad faith in registering a domain name is not, as a matter of law, entitled to benefit from the Act's safe harbor provision." *Id.* (emphasis added) (internal quotations omitted). Thus, Defendants cannot avail themselves of the safe harbor provision of the Anticybersquatting Act.

### 3. "Exceptional Case" and Award of Attorneys' Fees and Costs under 15 U.S.C. § 1117(a)

#### a. "Exceptional Case"

Under the Anticybersquatting Act, courts may only award attorneys' fees in "exceptional cases." 15 U.S.C. § 1117(a). "The Eleventh Circuit has traditionally interpreted the Lanham Act's exceptional case standard to allow for the award of fees 'only in exceptional circumstances and on evidence of fraud or bad faith.'" *Tobinick v. Novella*, 884 F.3d 1110, 1117 (11th Cir. 2018) (quoting *Safeway Stores, Inc. v. Safeway Disc. Drugs, Inc.*, 675 F.2d 1160, 1169 (11th Cir. 1982)). In light of the Supreme Court's decision in *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 572 U.S. 545 (2014), and the "unanimous voice of other circuits," however, the Eleventh Circuit has abrogated its past precedent and concluded that "to be an 'exceptional case' under the Lanham

Act requires only that a case 'stands out from others,' either based on the strength of the litigating positions or the manner in which the case was litigated.'" *Id.* at 1118. Most importantly, "the district court has the discretion to determine whether a case stands out from others based on the totality of the circumstances." *Domond v. PeopleNetwork APS*, No. 17-15576, 2018 WL 4519930, at *2 (11th Cir. Sept. 20, 2018) (citing *Tobinick*, 884 F.3d at 1117).

Here, analyzing the facts and circumstances of the case under either approach, the outcome is the same: the case is exceptional. As noted above, the Court has already found Defendants acted in bad faith. Moreover, as Plaintiff outlines, Defendants' manner of litigation leaves much to be desired. Defendants have filed countless extension requests[4], refused to engage in good faith discovery necessitating Court intervention[5], misrepresented facts to the Court[6], and filed cancellation proceedings with the United States Patent and Trademark Office in an attempt to stay this action[7]. Certainly, these facts are sufficient for this Court to exercise its discretion and find this case meets the standard and "stands out from the others" warranting fees under the Lanham Act.

### b. Amount of Fees and Costs

Based on counsels' affidavits attached to the trial briefs, it is clear Plaintiff is requesting attorneys' fees and costs for the entirety of the case[8]. Given that the Court is only considering attorneys' fees and costs pursuant to liability under the Anticybersquatting Act claim, the request is overly broad and must be tailored appropriately. Accordingly, Plaintiff shall file a separate

---

[4] *See* D.E. 23, 25, 120, 127, 136, 145, 202, and 231.
[5] *See* D.E. 172, Order on Plaintiff's Motion to Compel Discovery (D.E. 119) and Plaintiff's Motion for Order to Show Cause Why Defendants Should Not Be Sanctioned for Failure to Comply with Preliminary Injunction (D.E. 151).
[6] *See* D.E. 41, at 83:5-12 (Magistrate Judge O'Sullivan admonished Defendants for misrepresenting provisions of the Wholesaler Contract, stating "[I]t's a big mistake to try to put this in front of the Court and say, hey, they agreed that we can do whatever we want . . . I think it's a misstatement to this Court to use this. I think this is subterfuge.").
[7] *See* D.E. 206, Defendants' Motion to Stay.
[8] Specifically, Plaintiff is requesting $906,602.50 in attorneys' fees for Traverse Legal, PLC; $14,850.00 in fees for Reich Rodriguez, P.A.; and $530,087.86 in fees and $2,920.61 in costs for Tenzer Arrieta PLLC.

motion for attorneys' fees and costs detailing its request as it relates only to the work done on behalf of Palace Resorts on its Anticybersquatting Act claim by no later than **Friday, March 29, 2019**.

## III. CONCLUSION

The Court has considered the briefs, the replies, the pertinent portions of the record, and is otherwise fully advised in the premises, it is **ADJUDGED** as follows:

- Defendants shall transfer all of the following forty (40) Infringing Domain Names to Plaintiff Palace Resorts within fourteen (14) days of the date of this Order:

  1. beachpalacecancunhotel.com
  2. beachpalacecancunresort.com
  3. beachpalace.tv
  4. beachpalacegrand.com
  5. palacecancunhotel.com
  6. palacecozumel.com
  7. islamujerespalace.com
  8. islamujerespalacegrand.com
  9. palaceislamujeres.com
  10. islamujerespalaceresort.com
  11. leblanc-cancun.com
  12. leblanc-hotel.com
  13. leblancancunspa.com
  14. leblanccancunresort.com
  15. leblancresortspa.com
  16. moonpalacecancunresort.com
  17. moonpalacepuntacanahotel.com
  18. moonpalaceresortpuntacana.com
  19. moonpalacepuntacanaresort.com
  20. moonpalacejamaicagrand.com
  21. moonpalacejamaicaresort.com
  22. moonpalaceochorios.com
  23. moonpalacerivieramaya.com
  24. palacejamaicagrande.com
  25. palaceresortsguide.com
  26. xpu-hapalaceresort.com
  27. palaceplayacar.com
  28. playacarpalace.com
  29. playacarpalacegrand.com
  30. playacarpalaceresort.com
  31. palaceplayacarresort.com
  32. sunpalacecancunresort.com

> 33. sunpaceresort.com
> 34. sunpalace.tv
> 35. palacecancunresort.com
> 36. cancunandbeachpalace.com
> 37. cancunpalace.tv
> 38. cancunpalacelasamericas.com
> 39. cancunpalacespecials.com
> 40. palacecancun.com

- Plaintiff is entitled to statutory damages in the amount of **$10,000** per Infringing Domain Name, for a total of **$400,000.**

- This case is "exceptional" under the standard set forth by the Eleventh Circuit in *Tobinick v. Novella*, 884 F.3d 1110 (11th Cir. 2018), and thus Plaintiff is entitled to reasonable attorneys' fees and costs. Plaintiff is directed to file a separate motion for attorneys' fees and costs in accordance with the Court's aforementioned instructions by no later than **Friday, March 29, 2019**. Failure to file the motion by this deadline will result in a forfeiture of the award.

DONE AND ORDERED in Chambers at Miami, Florida, this ___15th___ of February 2019.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record