UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-20683-CIV-MORENO/LOUIS

HERON DEVELOPMENT CORPORATION,
and PALACE RESORTS, S.A. de C.V.,

    Plaintiffs,

vs.

VACATION TOURS, INC., d/b/a VACATION
STORE OF MIAMI, MEDIA INSIGHT
GROUP, INC., ROSANNA M. MENDEZ,
AND GEORGE A. ALVAREZ, jointly,
severally, and individually,

    Defendants.
                                                /

**REPORT AND RECOMMENDATION ON
PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS**

This cause came before the Court upon Plaintiffs' Motion for Attorneys' Fees and Costs ("Motion") (ECF No. 291). The Honorable Federico A. Moreno, United States District Judge, referred this case to the undersigned United States Magistrate Judge for submission of an Order on the Motion, pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B) and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida (ECF No. 306). Having carefully reviewed the Parties' submissions, the record, and being otherwise fully advised in the premises, the undersigned recommends that Plaintiff's Motion (ECF No. 291) be **GRANTED in part and DENIED in part**, for the reasons set forth below.

I. **BACKGROUND**

On February 24, 2016, Plaintiff Heron Development Corporation ("Heron") filed suit against Defendants Vacation Tours, Inc., Media Insight Group, Inc., Rosanna M. Mendez, and George A. Alvarez (collectively, "Defendants") alleging cybersquatting under the Anti-cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d); trademark infringement, false designation of origin, and dilution under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), and 1125(c); and trademark infringement, dilution, and deceptive and unfair trade practices under Florida law (ECF No. 1; ECF No. 44). At the time, Heron held the exclusive license to use, enforce, and protect certain trademarks of relevant non-party Palace Holding, S.A. de C.V. ("Palace Holdings")[1] in the United States (*see* ECF No. 280 at 2-4).

Defendants moved to dismiss or, alternatively, for a more definite statement, challenging in relevant part Heron's standing to bring the lawsuit and the adequacy of the ACPA claim as pled in the complaint (ECF No. 17 at 4, 7-9, 11-13). Judge Moreno granted Defendants' motion to dismiss with leave to amend (ECF No. 45), and Heron filed an Amended Complaint (raising the same claims) on December 22, 2016 (ECF No. 44).

Heron moved for a preliminary injunction and, at the injunction hearing, orally modified its request to seek injunctive relief solely as to the ACPA claim, reserving all other claims and issues for trial (ECF No. 94 at 2 n.1). Chief Magistrate Judge John J. O'Sullivan thereafter issued a Report recommending that a preliminary injunction issue, solely as to the ACPA claim and during the pendency of the action, to (1) prohibit Defendants from registering additional infringing domain names and (2) require Defendants to change the Domain Name Service settings on

---

[1] In February 2016, Palace Holdings assigned these trademarks and the licensing agreement with Heron to Plaintiff Palace Resorts, S.A. de C.V. ("Palace") (ECF No. 280 at 2-4).

infringing domain names to forward website traffic to the appropriate Palace webpage (*id.* at 31-32).  On May 26, 2017, Judge Moreno adopted the Report and Recommendation and entered a preliminary injunction as recommended (ECF No. 97).

Months later, during a hearing before Judge Moreno on pending matters in the case, Plaintiffs' counsel made an *ore tenus* motion for leave to amend the complaint in order to add Palace Resorts, S.A. de C.V. ("Palace") as a plaintiff in the case (ECF No. 173 at 47).  The Court granted the motion (*id.*).

Thus, on October 27, 2017, some twenty (20) months after commencement of this lawsuit, Palace was added as a party in this case upon the filing of the Second Amended Complaint (ECF No. 170).  Defendants promptly filed a motion to dismiss the new complaint (ECF No. 184) which Judge Moreno granted in part and denied in part (ECF No. 196).  In his Order, Judge Moreno concluded that Palace had standing and had stated a cause of action upon which relief could be granted as to five of the seven counts, i.e., the ACPA claim, federal and state trademark infringement claims, and federal and state false designation of origin claims; the Court dismissed Palace's remaining two counts (the federal and state anti-dilution claims) (*id.* at 25-26).  As for Heron, Judge Moreno dismissed Heron's ACPA claim for lack of standing; he dismissed two additional claims on the same ground (the federal and state trademark infringement and dilution claims) but ruled that Heron could proceed on its federal and state false designation of origin claims (*id.*).

Palace thereafter moved for partial summary judgment solely on the ACPA claim, reserving the issue of damages for trial, together with its remaining claims (ECF No. 221 at 4).  On June 12, 2018, Judge Moreno granted the motion, finding that Palace was entitled to judgment as a matter of law on the ACPA claim (ECF No. 240).

Soon thereafter Palace and Heron moved to voluntarily dismiss all remaining claims and proceed to a bench trial on the following issues: Palace's entitlement to statutory damages under 15 U.S.C. § 1117(d); an award of attorneys' fees and costs pursuant to 15 U.S.C. § 1117(a) which provides that a court may "in exceptional cases" award reasonable attorney's fees to the prevailing party; and the entry of a permanent injunction against Defendants (ECF No. 244). Judge Moreno granted the motion on July 12, 2018 and dismissed all but the ACPA claim (ECF No. 256). That left Palace as the only plaintiff in the case, and Palace's ACPA claim against Defendants as the sole claim remaining (ECF No. 280 at 2 n.2).

Judge Moreno ordered the Parties to brief the issues mentioned above (statutory damages, attorneys' fees and costs, and permanent injunctive relief) (ECF No. 263). Judge Moreno subsequently ruled, on February 15, 2019, that Palace was entitled to injunctive relief and statutory damages (ECF No. 280 at 17-18). Relevant for present purposes is the Judge's finding that this case is "exceptional" and therefore an award of attorneys' fees and costs to Palace under 15 U.S.C. § 1117(a) is warranted -- but only pursuant to liability under the ACPA claim (id. at 15-16). Because it was apparent from Palace's submissions that it was seeking fees and costs for the entirety of the case, Judge Moreno ordered Palace to file a separate motion "detailing its request as it relates only to the work done on behalf of Palace [] on its [ACPA] claim." (*Id.* at 16-17). After briefing, the matter was referred to the undersigned to determine the amount of reasonable fees and costs to award Palace (ECF No. 306).

## II. ANALYSIS

### A. Legal Standard

The Eleventh Circuit has adopted the lodestar method to determine the reasonableness of an award of attorneys' fees. *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299

(11th Cir. 1988). The lodestar method consists of determining the reasonable hourly rate, and multiplying that number by the number of hours reasonably expended on the litigation by counsel. *See, e.g., Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994); *Norman*, 836 F.2d at 1299; *Harbaugh v. Greslin*, 365 F. Supp. 2d 1274, 1279 (S.D. Fla. 2005). The fee applicant bears the burden of establishing entitlement to the award and documenting the appropriate hours and hourly rates. *Am. Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999). That burden includes submitting "specific and detailed evidence" from which the court can determine the reasonably hourly rate as well as billing records that reflect the time spent on different claims, and "the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity." *Id.* (quoting *Norman*, 836 F.2d at 1303); *see also* S.D. Fla. Local Rule 7.3(a).

Notably, courts are not permitted "to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." *Barnes*, 168 F.3d at 428. However, a court reviewing a fees application need not become a "green-eyeshade accountant[]." *Fox v. Vice*, 563 U.S. 826, 838 (2011). Rather, the essential goal for a court is to "do rough justice, not to achieve auditing perfection." *Id.*

B. Discussion

The undersigned begins by repeating what Judge Moreno stated in his February 15, 2019 Trial Order: this case is exceptional and Palace is entitled to an award of attorneys' fees and costs as to its ACPA claim pursuant to the Lanham Act (ECF No. 280 at 15-16). However, because Palace's original request sought fees and costs for the entire case, Judge Moreno ordered Palace

to submit a new request for only the work done on Palace's behalf on its ACPA claim (*id.* at 16-17).

In its revised submission, Palace claims attorneys' fees through February 15, 2019 (the date on which Judge Moreno found fees were warranted) in the following amounts: (1) $936,465.00 for Traverse Legal, PLC;[2] (2) $517,741.86 for Tenzer Arietta, PLLC;[3] and (3) $13,087.50 for Reich Rodriguez, P.A.[4] Palace contends that all of the fees requested relate only to work performed in pursuit of the ACPA claim, including the interlocutory appeal; all work performed on other issues entirely unrelated to that claim were excised from the request. Palace also seeks reimbursement of costs in the amount of $2,920.61.[5]

Defendants dispute that Palace's attorneys are entitled to the amount requested. They insist that Palace failed to separate out work done on non-ACPA claims or work done on behalf of Plaintiff Heron, in contravention of Judge Moreno's explicit directive regarding the permissible scope of the fees request. Defendants also contend that Palace failed to exclude excessive,

---

[2] Enrico Schaefer, Esq. stated in his Declaration submitted in support of Palace's motion for attorneys' fees and costs that the total number of hours reasonably expended by his firm, Traverse Legal, PLC, between October 2015 and February 15, 2019 that related to the ACPA claim, including the interlocutory appeal, is 2,071.95 hours (ECF No. 291-2 at 4-5 ¶¶ 5-7).

[3] Ari Tenzer, Esq., stated in his Declaration that the total number of hours reasonably expended by his firm, Tenzer Arrieta PLLC (formerly known as Tenzer PLLC), between December 2015 and February 19, 2018 on matters that related to the promotion of the ACPA claim, including the interlocutory appeal, was 1,416.80 hours (ECF No. 291-3 at 3-4 ¶¶ 5-6).

[4] Laura M. Reich, Esq., stated in her Amended Declaration that the total number of hours reasonably expended by her firm, Reich Rodriguez, P.A., between March 2018 and August 1, 2018 on Plaintiff's ACPA claim was 34.9 hours (ECF No. 291-4 at 3 ¶¶ 5-6, 8).

[5] Citing an itemized list of expenses attached to his Declaration, Mr. Tenzer appears to indicate that his firm incurred a total of $2,920.61 in expenses on behalf of Plaintiffs, all of which he states were reasonable and necessary for the prosecution of the litigation (ECF No. 291-3 at 4 ¶ 7, 135).

redundant, and otherwise unnecessary hours; failed to provide sufficiently specific and detailed evidence from which Defendants and the Court can determine the time actually spent on work for Palace and the ACPA claim; and failed to comply with Local Rules 7.3(a)(4) and (7) by not disclosing the terms of any applicable fee agreement and not filing a properly verified motion.[6]

   1. Attorneys' Fees

The undersigned begins with an analysis of the hourly rate sought by Palace's attorneys. The undersigned then considers whether the submissions demonstrate that the number of hours claimed are reasonable. Finally, the undersigned considers whether the results in the case warrant adjustment of the lodestar calculated.

      a. Reasonable Hourly Rate

A reasonable hourly rate is defined as the "prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman,* 836 F.2d at 1299. Under a fee-shifting statute, a prevailing plaintiff is only entitled to have the losing party pay for an attorney with reasonable expertise at the prevailing market rate, not for the most experienced attorney. *See Barnes*, 168 F.3d at 437. The relevant

---

[6] The undersigned can quickly dispense with the procedural argument advanced by Defendants. Palace did not deny it failed to meet the requirements of Local Rules 7.3(a)(4) and (7), but says it was acting in compliance with the explicit directions given by Judge Moreno during the calendar call in regard to briefing the issue of fees and costs. Judge Moreno ordered Palace, in lieu of a bench trial, to brief why the case was exceptional under the Lanham Act and what its reasonable attorneys' fees and costs were (ECF No. 279 at 24-28; *see also* ECF No. 263 (Order Setting Briefing Schedule)). Defendants were given the opportunity to file their brief in opposition, which they did. Subsequently, Judge Moreno found the case was exceptional, but determined that the fees award would be limited to ACPA-related work done on behalf of Palace (ECF No. 280 at 16-17). Thus, he ordered Palace to file a second motion so limiting its request (*id.*). That is the motion presently before the undersigned. Neither Defendants nor Judge Moreno mentioned the procedural compliance issue that Defendants now raise. Under the circumstances present here, the undersigned finds that Plaintiffs' complied with the Court's Orders and Defendants waived their challenge to Plaintiffs' strict compliance with the Local Rule.

7

legal community for purposes of determining the reasonable hourly rate for an attorney's service is "the place where the case is filed." *Cullens v. Georgia Dep't of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994). The fee applicant bears the burden of demonstrating that the rates charged are reasonable in the relevant legal community. *Norman*, 836 F.2d at 1299. However, as the Court is itself deemed an expert on the issue, it "may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Id.* at 1303 (citation omitted).

Defendants raised no objection to the hourly rates claimed by any of Palace's counsel, the highest of which was $550 per hour and charged by Enrico Schaefer, of Traverse Legal PLC (ECF No. 291-2 at 47). The undersigned has independently reviewed the Declarations and related exhibits submitted in support of Palace's fees and costs motion, as well as cases from this district that discuss reasonable rates for intellectual property attorneys and appellate specialists. While the rates sought here are on the high end, they are unopposed. Based on the lack of objection from opposing counsel, and the undersigned's own knowledge of billing rates charged by other intellectual property and appellate lawyers in South Florida, the undersigned finds that the hourly rates claimed by Palace's counsel for this type of work are reasonable in this legal community. *See, e.g., Domond v. PeopleNetwork APS*, 750 F. App'x 844, 848 (11th Cir. 2018) (affirming district court's finding, in an "exceptional" case brought pursuant to the Lanham Act for trademark infringement, that attorneys' hourly rates of $425 and $650 were reasonable in light of evidence about Miami rates and in light of counsel's skill, experience, and reputation).

    b. <u>Number of Hours Reasonably Expended</u>

Next, the undersigned must determine the number of hours reasonably expended on behalf of Palace on its ACPA claim (*see* ECF No. 280 at 16-17). A fee applicant must set out the general

subject matter of the time expended by the attorney "with sufficient particularity so that the court can assess the time claimed for each activity." *Norman*, 836 F.2d at 1303. Excessive, redundant, or otherwise unnecessary hours should be excluded from the amount claimed. *Id.* at 1301. Fee applicants must exercise "billing judgment" and exclude "excessive, redundant, or otherwise unnecessary" hours from their fee petitions. *Barnes*, 168 F.3d at 428 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). When fee applicants fail to exercise billing judgment, the court is obligated to do it for them. *Id.* Thus, when a request for attorneys' fees is unreasonably high, the court "may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut," but it cannot do both. *See Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1351 (11th Cir. 2008).

The party opposing fees also has an obligation to provide specific and precise objections concerning hours that should be excluded. *Barnes*, 168 F.3d at 427 (stating that objections from fee opponents must be specific and "reasonably precise"); *Norman*, 836 F.2d at 1301 ("[a]s the district court must be reasonably precise in excluding hours thought to be unreasonable or unnecessary, so should be the objections and proof from fee opponents."). Generalized statements that the time spent was unnecessary or unreasonable are not particularly helpful and not entitled to much weight. *Id.*; *see also Gray v*. Lockheed Aeronautical Sys. Co., 125 F.3d 1387, 1389 (11th Cir. 1997); *Scelta v. Delicatessen Support Srvcs. Inc.*, 203 F.Supp.2d 1328, 1332-33 (M.D. Fla. 2002).

Defendants argue that Palace's submission includes fees for work performed on behalf of Plaintiff Heron and for claims other than the ACPA claim. Defendants posit that Palace is not entitled to an award of *any* fees or costs for work performed prior to October 27, 2017, the date on which Palace was added as a party in this case. Prior to that date, they argue, no work could have

been done on Palace's behalf because Heron was the sole plaintiff prosecuting the case. Therefore, Defendants conclude, all fees and costs incurred prior to October 27, 2017 should be disallowed.[7]

In addition, Defendants contend that further reduction is warranted because there were two plaintiffs and seven claims for much of the litigation, yet Palace seeks reimbursement for substantially all time incurred in this litigation, in contravention of Judge Moreno's instruction to segregate the work done solely on behalf of Palace and on the ACPA claim. Defendants specifically object to "massive lists of time entries" that contain general task descriptions and improper block-billing, and invoices that show work the Tenzer firm's attorneys performed that was billed to International Hotel Reservations, S.A. or Heron, but not to Palace (ECF No. 300 at 9). Defendants insist that Palace's failure to provide specific and detailed billing records leaves the Court and defense counsel unable to determine whether the fees incurred by counsel were actually incurred in connection with Palace's ACPA claim, or on behalf of Heron, or for work on any other claims. Under the circumstances, Defendants claim, an across-the-board cut of 85% is appropriate, leaving $72,685.10 as the amount of reasonable attorneys' fees and costs that should be awarded to Palace.

The undersigned concurs with Defendants that Palace failed to tailor its request to comply with Judge Moreno's clear instructions: submit a request that concerned only those fees incurred in the prosecution of the ACPA claim on behalf of Palace.

Though Palace defends its submission on the ground that the ACPA claim has been the central claim in this litigation since its inception, there are minimal entries in the billing records that reflect efforts dedicated to that particular claim. In fact, Palace concedes that its attorneys did

---

[7] Defendants state that the total amount that should be deducted because it was incurred before October 27, 2017 is $982,727.06 (ECF No. 300 at 7-8).

not keep separate time entries for separate claims (ECF No. 307 at 5 ("As Plaintiff's claims were all related to trademark infringement, attorney time entries were not kept as to each separate claim[.]"). But counsel's choice of how to maintain time records has defeated the Court's ability to ascertain the time spent on particular claims and whether that time was necessary and reasonable. *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (explaining that attorneys should "maintain billing records in a manner that will enable a reviewing court to identify distinct claims").

However, there is at least *minimal* indication that work done before Palace was added as a Plaintiff was, as Palace contends, performed in pursuit of the ACPA claim. For example, of the 17.7 hours[8] expended to respond to Defendants' first motion to dismiss, a single entry (of .5 hours on May 2, 2016) indicates research specific to the ACPA claim was performed.[9] Moreover, as Palace contends, Heron's efforts in defending the ACPA claim against Defendants' first motion to dismiss were relevant to and inured to the benefit of later-added Plaintiff Palace, as Judge Moreno recognized that an actionable claim had been stated though it was Palace who ultimately had standing to raise it. Thus, while Palace's submission precludes me from determining precisely how much time was dedicated solely to the ACPA claim before Palace was named, the billing records support Palace's contention that there was work performed before October 27, 2017 that was related to the successful claim.

It is also evident that some of counsel's efforts were directed to events that were not necessary to the prosecution of the ACPA claim to final judgment. A considerable amount of

---

[8] By the Traverse firm only; the Tenzer firm separately billed 91.7 hours for their efforts in responding to the motion to dismiss.

[9] Unfortunately, subsequent time entries indicate another biller from the firm later duplicated that exact research on November 2, 2017. Duplication of efforts is further discussed below.

attorney time was devoted to defending Heron's standing to sue under the ACPA based on its status as an exclusive licensee of Palace's Marks, an effort that was both unsuccessful and clearly *not* exclusively related solely to the work done on behalf of Palace on the ACPA claim. It is clear from the time entries that there was an awareness that standing was a potential issue even before the complaint was filed, and not an issue related to the ultimate success that Palace achieved.

Similarly, Plaintiff's defense of the preliminary injunction order on appeal, while understandable, was not related to the goal of achieving judgment on the ACPA claim. Indeed, as the Mandate from the Eleventh Circuit makes clear, once Judge Moreno entered final judgment in favor of Palace on the ACPA claim, the issue of the preliminary injunction was rendered moot. *Heron Dev. Corp. v. Vacation Tours Inc.*, 763 F. App'x 875, 876 (11th Cir. 2019) (holding that once Judge Moreno entered final judgment in the case, the issue on appeal, i.e., whether the preliminary injunction entered on Heron's ACPA claim survived the dismissal of that claim as to Heron, became moot).

While it is possible that some of the hours expended on the foregoing tasks relate to work done on behalf of Palace on its ACPA claim, the lack of specificity of the billing records prevents me from finding that it was done solely, or even primarily, in that pursuit. Ultimately, it is Plaintiff, as movant, who bears the burden of evidencing that the time incurred was reasonably incurred, and as further explained below, the billing records advanced in support of Plaintiff's motion fall short of what the law of this Circuit requires in many respects. However, I find that the resulting reduction should be applied to the entire period of representation submitted for reimbursement, and reject Defendants' request to cut all time incurred before October of 2017.

Counsel's time records are replete with all the errors that the Eleventh Circuit admonishes counsel to avoid: vague entries, block billing, and duplication of effort by multiple billing

attorneys (and multiple firms), all of which point to a failure to exercise billing judgment. The undersigned provides a few examples here but has not attempted to conduct a line correction in the records.

Duplicative billing is the most pervasive issue the undersigned identified in the records submitted. The instances are too common to attempt to recount, but the time records reveal that multiple attorneys participated in virtually each task, generally without indicating the unique contribution by any of the billers. For example, two attorneys from each of the two firms then representing Heron expended over a hundred hours in responding to Defendants' first motion to dismiss. In preparing to respond to Defendants' motion for reconsideration, two attorneys billed a combined total of 13 hours of time on the same day (January 12, 2017). After Magistrate Judge O'Sullivan recommended that Heron's motion for preliminary injunction be granted, five attorneys from two firms prepared a response to Defendants' objections to the Report. Multiple attorneys drafted Heron's motion to compel discovery responses, and its reply. At least three of Heron's attorneys attended mediation (before Palace was added as a Plaintiff); all three billed different amounts of time for their respective attendance, and none offered to explain how fees for all three were necessary, or reasonably incurred.

There is of course nothing inherently unreasonable about a client relying on multiple attorneys, but a fee applicant may only recover for the hours of multiple attorneys if the attorneys "are not unreasonably doing the same work, and are being compensated for the distinct contribution of each lawyer." *Norman* 836 F.2d at 1302; *Barnes,* 168 F.3d at 432. A fee applicant has the burden to show "that the time spent by those attorneys reflects the distinct contribution of each lawyer to the case and is the customary practice of multiple-lawyer litigation." *Barnes*, 168 F.3d at 432. Here, based on the descriptions of the work performed by the various attorneys who

represented Plaintiffs, the undersigned not only found multiple attorneys billing for completing the same tasks, but also each attorney repeatedly billing multiple hours for those same tasks. Unfortunately, the declarations submitted with the billing records do not clarify the distinct contribution each lawyer contributed to the effort, leaving the Court unable to determine whether any of the work performed was excessive or redundant.[10]

The absence of specificity in counsel's time records permeates the records but is particularly illustrative in the block billing employed repeatedly throughout these records. Mr. Schaefer has numerous time entries that are in excess of 8 hours, but reflect only a minimal description, usually accompanied by his travel time to or from Miami for mediation or hearing. When an attorney includes multiple tasks in a single entry, it can be difficult for the Court to determine the amount of time expended on a single issue. A court has "broad discretion in determining the extent to which a reduction in fees is warranted by block billing." *Bujanowski v. Kocontes*, No. 8:08-CV-0390-T-33EAJ, 2009 WL 1564263, at *2 (M.D. Fla. Feb. 2, 2009), *report and recommendation adopted in part*, 2009 WL 1564244 (M.D. Fla. May 1, 2009), *aff'd,* 359 F. App'x 112 (11th Cir. 2009) (district court did not abuse its discretion in only reducing the total amount of attorneys' fees requested by twenty percent instead of adopting the magistrate's recommended thirty percent reduction); *see also Ceres Envtl. Servs., Inc. v. Colonel McCrary Trucking, LLC*, 476 F. App'x 198, 203-204 (11th Cir. 2012) (district court did not abuse its discretion by applying a ten percent reduction in block-billed hours); *Richburg v. Carmel at the Calif. Club Prop. Owners Ass'n*, No. 18-21944-CV-WILLIAMS/TORRES, 2019 WL 2255586, at

---

[10] There are even instances of duplication of effort by the same attorney. For instance, Mr. Schaefer had multiple entries that apparently duplicated his own efforts: his time entries for May 8 and 9, 2017, are nearly identical—though he consistently billed the same 6.5 hours both times. Similarly, Mr. Schaefer entered two separate time diaries on February 10, 2017 for preparation and attendance at deposition, totaling 11.8 hours that day.

*3 (S.D. Fla. May 1, 2019) (applying a thirty percent reduction to the block-billed entries), *report and recommendation adopted*, 2019 WL 3429134 (S.D. Fla. July 8, 2019).

Another problem evident from the billing records is that Plaintiffs made inefficient use of counsel's time, as the highest biller (Mr. Schaefer) often conducted mundane and apparently administrative tasks, e.g., researching domain names and updating the "extranet." Mr. Schaefer's time entries show that he billed for these internet research tasks on two different dates, weeks apart (October 27 and December 2, 2015), before filing the complaint. Palace's counsel is not entitled to recover attorney's fees for work of a clerical nature. *Richburg*, 2019 WL 2255586, at *4.

Turning to the calculation of the adjusted number of hours that may be awarded in this case, the undersigned has two options: engage in a task-by-task examination of the hours billed to excise excessive or redundant hours, *e.g., Barnes*, 168 F.3d at 429, or conclude that an hour-by-hour analysis is impractical and an across-the-board cut is appropriate, *e.g., St. Fleur v. City of Fort Lauderdale*, 149 F. App'x 849, 853-54 (11th Cir. 2005) (where plaintiff's counsel claimed over 1,500 hours for compensation, district court did not abuse its discretion by failing to engage in a more detailed, task-by-task analysis of fees that it was disallowing; affirming thirty percent across-the-board reduction); *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1311 (11th Cir. 2001) (determining that 569.30 hours submitted for compensation "are extensive enough that we do not expect the district court or the magistrate judge to conduct an hour-by-hour analysis in this case"; affirming twenty-five percent across-the-board reduction).

Upon reviewing the record as a whole, the number of hours billed, and the pervasive lack of meaningful descriptions of those tasks, the undersigned concludes that a substantial across-the-board reduction is the appropriate method for arriving at a reasonable fee amount in this

15

"exceptional" case. *United States v. Everglades Coll., Inc.*, 855 F.3d 1279, 1293 (11th Cir. 2017) (affirming reduction by 95% of fee award where district court considered all of the circumstances rather than merely "mathematical approach" of reducing by unsuccessful claims). As noted above, the records reflect unexplained and substantial duplication that must be reduced. Identifying the precise degree to which the hours billed are redundant is not practical, but here I recommend that the Court reduce the number of hours to be reimbursed by two-thirds. What one attorney could do in this case was consistently performed by at least three. There are tasks for which duplicative billing might not have occurred, but the practice was frequent enough to support an award of no more than one third of the total time billed.

That reduction alone will not reach a reasonable award; further reduction is necessary to account for Plaintiff's submission of fees incurred on tasks not related to the successful ACPA claim. Again, it is difficult to say with precision exactly how much time advanced in the records exceeds that purpose, particularly as the docket demonstrates that Defendants' approach to this litigation unnecessarily drove up the costs to prosecute the case (which in part led to Judge Moreno concluding the case was exceptional). However, it is Plaintiff's burden to support its application, and it has failed to justify the hours expended for all tasks. The clearest example of tasks for which Plaintiff seeks reimbursement that the evidence fails to support as related arise from counsel's defense of Heron's standing throughout the litigation. In order to further account for this overstatement of reimbursable time, I recommend an additional reduction of 25% of time billed by all three law firms.

Thus, the following amounts should be awarded to Palace's counsel: (1) $234,116.25 for Traverse Legal, PLC; (2) $129,435.47 for Tenzer Arietta, PLLC; and (3) $3,271.88 for Reich Rodriguez, P.A., for a total attorneys' fees award from Defendants of $366,823.60.

### 2. Taxable Costs

Palace also seeks an award of costs, pursuant to 28 U.S.C. § 1920, in the amount of $2,920.61. Mr. Tenzer submitted a table summarizing certain expenses (ECF No. 291-3 at 135) - compiled from his firm's client invoices - that he identified as being reasonable and necessary for the prosecution of this litigation (*id.* at 4 ¶ 7). Defendants did not raise any specific objection to the request for costs.

Although Palace failed to submit documentation to support the expenses for which reimbursement is sought, the undersigned can determine, by reference to the individual client invoices and the Court docket, that some of the charges relate to the ACPA claim and fall within the limited category of costs that are taxable under § 1920. *See Global Van Lines, Inc. v. Global Van Lines, Inc.*, No. 05-61410 CIV-UNGARO/O'SULLIVAN, 2007 WL 9698319, at * 4 (S.D. Fla. April 23, 2007) (in a Lanham Act case, denying request for costs for legal research, courier services, telephone and postage fees, and expert fees, as all were non-recoverable under 28 U.S.C. § 1920), *report and recommendation adopted*, No.05-61410-CIV-UNGARO, 2007 WL 9698320 (S.D. Fla. May 15, 2007).

Palace seeks reimbursement in the amount of $400 for "Filing Fee for Complaint, Exhibits, and Civil Cover Sheet." This amount is recoverable under § 1920(1). A $75 charge, also identified as "Filing Fee for Complaint, Exhibits, and Civil Cover Sheet," was in all likelihood the cost of filing Mr. Schaefer's Motion to Appear *Pro Hac Vice* (*see* ECF No. 291-3 at 14-15). Palace did not cite a legal basis for finding this fee taxable under § 1920, and the undersigned declines to do so here. *See Daniel-Rivera v. Everglades College*, No. 16-60044-CIV-DIMITROULEAS/SNOW, 2017 WL 5197509, at * 6 (S.D. Fla. June 16, 2017) (finding persuasive cases from trial courts in

the Eleventh Circuit holding that fees associated with *pro hac vice* motions are not recoverable under § 1920), *report and recommendation adopted*, 2017 WL 5197949 (June 30, 2017).

Palace seeks $200 for service of process on three Defendants. Private process server fees are typically recoverable under § 1920(1) and 28 U.S.C. § 1921, but only up to the standard $65 hourly rate charged by the U.S. Marshal's Service. *U.S. EEOC v. W&O, Inc.*, 213 F.3d 600, 623 (11th Cir. 2000); *BVS Acquisition Co., LLC v. Brown*, No. 12-cv-80247-MIDDLEBROOKS, 2015 WL 12921971, at * 6 (S.D. Fla. Aug. 5, 2015); 28 C.F.R. § 0.114(a)(3). Palace did not provide documentation for this $200 charge and may recover only $65 per Defendant ($195).

Palace seeks $818.30 for the deposition transcript of S. Winkler; the transcript was used during the evidentiary portion of the preliminary injunction proceeding which, as noted previously, was limited to the ACPA claim (ECF No. 54[11]; ECF No. 92). The cost of a deposition transcript is taxable under § 1920(2) if it was necessarily obtained for use in the case; without an invoice, it is impossible to tell whether the total amount charged was for one copy of the transcript or for extraneous costs ordered for the convenience of counsel such as expedited or condensed transcripts, compressed and miniscript versions, or CD ROMs with ASCII. The burden is on the party seeking an award of costs, and in the absence of evidence of a recoverable amount, the undersigned declines to recommend that Palace recover for this expense.

Palace seeks reimbursement for the costs associated with three additional transcripts: the December 5, 2016 hearing ($533.50), the evidentiary hearing ($799.20), and the October 23, 2017

---

[11] Plaintiff Heron listed Mr. Winkler as a witness at the preliminary injunction hearing and described his expected area of testimony as follows: "Mr. Winkler was involved in a number of issues involving Vacation Store, including but not limited to the Wholesale Contract, trademark infringement, customer confusion, the strength and notoriety of the trademarks, Palace Resort operational issues, and related matters." (ECF No. 54 at 2).

hearing ($70.80). Again, the lack of any documentation showing that these transcripts were necessarily obtained for use in this case and, more specifically, for use in prosecuting the ACPA claim, impels the undersigned to recommend these costs be denied.

The FedEx charges are not recoverable under § 1920, therefore, the $24.80 must be disallowed. *See Watson v. Lake Cty.*, 492 F. App'x 991, 997 (11th Cir. 2012) ("§ 1920 does not authorize recovery of costs for shipment of depositions."); *Robinson v. Alutiq-Mele, LLC*, 643 F. Supp. 2d 1342, 1354 (S.D. Fla. 2009) (costs to ship and handle depositions are not taxable absent a showing that they were necessarily obtained for use in the case as opposed to being incurred for the convenience of counsel).

Based on the foregoing, the undersigned recommends that Palace be awarded $595 in costs.

## III.    RECOMMENDATION

For the foregoing reasons, the undersigned recommends that Plaintiff Palace Resorts, S.A. de C.V.'s Motion for Attorneys' Fees and Costs (ECF No. 291) be **GRANTED in part and DENIED in part**, in that Palace should recover from Defendants Vacation Tours, Inc., Media Insight Group, Inc., Rosanna M. Mendez, and George A. Alvarez, jointly and severally, a total of $366,823.60 in attorneys' fees and $595 in costs.

Pursuant to Local Magistrate Rule 4(b), written objections, if any, must be filed with the Honorable Federico A. Moreno, United States District Judge by no later than September 9, 2019. Failure to file objections by that date shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report and shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. *See* 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *Patton v.*

*Rowell*, 2017 WL 443634 (11th Cir. Feb. 2, 2017). Any responses thereto must be filed no later than September 20, 2019.

      **RESPECTFULLY SUBMITTED** in Chambers this 27th day of August, 2019.

_____
LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE

The Honorable Federico A. Moreno
Counsel of Record